IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,    )
                             )
              PLAINTIFF,     )
                             )
        VS.                  )
                             )            DOCKET NUMBER
TOMAR SHAW,                  )        1:11-CR-239-CAP-29
                             )
              DEFENDANT.     )          ATLANTA, GEORGIA
                             )          OCTOBER 11, 2011
                             )
_____)

TRANSCRIPT OF MAGISTRATE PROCEEDINGS
BEFORE THE HONORABLE E. CLAYTON SCOFIELD, III,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              LISA TARVIN
                               UNITED STATES ATTORNEY'S OFFICE
                               ATLANTA, GEORGIA  30303

FOR THE DEFENDANT:             STEVEN SADOW
                               LAW OFFICE OF STEVEN H. SADOW
                               ATLANTA, GEORGIA  30303

OFFICIAL COURT REPORTER:       MONTRELL VANN, CCR,RPR,RMR,CRR
                               2394 UNITED STATES COURTHOUSE
                               75 SPRING STREET, SOUTHWEST
                               ATLANTA, GEORGIA  30303
                               (404)215-1549

I N D E X

                                                        PAGE

DEFENDANT'S WITNESSES

GREGORY DEAN MALLOY

    DIRECT EXAMINATION BY MR. SADOW              17
    CROSS-EXAMINATION BY MS. TARVIN              30
    REDIRECT EXAMINATION BY MR. SADOW            32

LEONARD VAN PURVINES

    DIRECT EXAMINATION BY MR. SADOW              33
    CROSS-EXAMINATION BY MS. TARVIN              38

REPORTER'S CERTIFICATE                           42

1    *(IN ATLANTA, FULTON COUNTY, GEORGIA, OCTOBER 11, 2011, IN*

2    *OPEN COURT.)*

3         THE COURT:  ALL RIGHT.  THIS AFTERNOON WE HAVE THE

4    CASE OF UNITED STATES OF AMERICA VERSUS TOMAR SHAW.  THIS IS

5    CRIMINAL INDICTMENT NUMBER 1:11-CR-239.  AND IT IS BEFORE THE

6    COURT THIS AFTERNOON ON THE MOTIONS -- MOTION OR MOTIONS TO

7    SUPPRESS ON BEHALF OF THE DEFENDANT.

8         AND I KNOW WE TOOK UP, MR. SADOW, OR TALKED ABOUT THEM AT

9    OUR INITIAL PRETRIAL CONFERENCE.  AND I DON'T KNOW -- I DON'T

10   RECALL THE SPECIFICS OF WHAT THEY RELATE TO.

11        MAYBE, MS. TARVIN, YOU CAN ORIENT ME AS TO WHAT WE HAVE TO

12   HEAR.

13        MS. TARVIN:  YES, YOUR HONOR.  WHEN MR. SHAW WAS

14   ARRESTED ON JUNE THE 8TH OF 2011, AGENTS WENT TO HIS RESIDENCE

15   ARMED ONLY WITH AN ARREST WARRANT.  THEY ARRESTED HIM, SEARCHED

16   HIS PERSON, FOUND SOME TELEPHONES, AND THEN CONDUCTED A SEARCH

17   OF THE RESIDENCE.  THE GOVERNMENT HAS INFORMED DEFENSE COUNSEL

18   THAT WE WILL NOT BE SEEKING TO INTRODUCE ANY EVIDENCE SEIZED

19   FROM THE RESIDENCE AT 4626 DERBY LOOP DRIVE.  AND THOSE -- THE

20   RELEVANT EXHIBIT NUMBERS ARE N-318, N-320, N-321, N-322, AND

21   EXHIBITS 26 AND 27.  THE GOVERNMENT FURTHER TOLD MR. SADOW THAT

22   WE WOULD BE SEEKING TO INTRODUCE EXHIBITS 317, WHICH WERE THREE

23   TELEPHONES THAT WERE FOUND ON MR. SHAW'S PERSON, AND THEN A

24   NOTEBOOK THAT WAS FOUND ON THE PERSON OF ANOTHER INDIVIDUAL AT

25   THE SCENE.  THEREAFTER THE GOVERNMENT OBTAINED FROM THIS COURT

```
 1    THREE SEARCH WARRANTS FOR THE TELEPHONES THAT COMPRISE EXHIBIT
 2    N-317.  THE PHOTOS WERE ACTUALLY SEARCHED AT THE SCENE BY HAND.
 3    THE GOVERNMENT THEN CAME BACK, ASKED FOR A SEARCH WARRANT AND
 4    THEN RE-SEARCHED THE PHONES.  AND SO I GUESS THE ISSUE -- I'M
 5    NOT SURE EXACTLY WHAT THE ISSUE IS TODAY BECAUSE WE HAVE GOTTEN
 6    THOSE SEARCH WARRANTS, AND I CAN INTRODUCE THEM INTO THE RECORD.
 7    SO I'M NOT SURE EXACTLY WHAT THE ISSUE IS, WHETHER IT IS WHETHER
 8    OR NOT LAW ENFORCEMENT WERE ENTITLED TO SEIZE THE PHONES FROM
 9    MR. SHAW'S PERSON, OR IF SOMEHOW THE DEFENSE IS CONTENDING THAT
10    SOME -- THAT THE -- THAT THERE'S SOMETHING IMPROPER ABOUT THE
11    MANNER IN WHICH THE SEARCH WARRANTS WERE OBTAINED.
12              THE COURT:  ALL RIGHT.  WELL, AT LEAST IT'S NARROWED
13    FROM WHAT IT MIGHT BE WITH RESPECT TO THE SEARCH OF THE
14    RESIDENCE.
15              MS. TARVIN:  YES.
16              THE COURT:  ALL RIGHT.  THEN, MR. SADOW --
17              MR. SADOW:  IF I MIGHT?
18              THE COURT:  YEAH.
19              MR. SADOW:  LET ME COMMENT ON WHAT GOVERNMENT COUNSEL
20    HAS INDICATED.  THAT LEAVES THE REMAINING 'N' EXHIBITS AS 317
21    WHICH WOULD BE THE THREE PHONES, AND N-319 WHICH WAS AN ITEM
22    SEIZED FROM THE PERSON OF ANOTHER INDIVIDUAL THAT WAS LOCATED AT
23    THIS RESIDENCE ON JUNE 8TH OF 2011.  THE GENTLEMAN'S NAME WAS --
24              MS. TARVIN:  ALONZO WILSON.
25              MR. SADOW:  -- WILSON.  SO N-319 WE ARE NOT GOING
```

1    FORWARD SEEKING TO SUPPRESS, DO NOT BELIEVE WE WOULD HAVE

2    STANDING TO CONTEST THE SEIZURE OF AN ITEM FROM HIS PERSON.

3              THE COURT:  ALL RIGHT.

4              MR. SADOW:  SO THAT LEAVES US N-317, THE THREE

5    TELEPHONES.

6              THE COURT:  RIGHT.  AND POTENTIALLY TWO ISSUES WITH

7    RESPECT TO THAT.  ONE IS THE SEIZURE OF THE PHONES AT THE TIME

8    OF THE ARREST.

9              MR. SADOW:  WHICH WE ARE NOT CONTESTING.

10             THE COURT:  ALL RIGHT.  AND THEN THE SECOND WOULD BE

11   THE SEARCH WARRANT -- THE VALIDITY OF THE SEARCH WARRANTS THAT

12   WERE ISSUED THEREAFTER; IS THAT WHAT YOU'RE SAYING?

13             MR. SADOW:  AND IT'S A STRANGE QUESTION BECAUSE IT'S

14   NOT WHETHER THE SEARCH WARRANT IS VALID.  IT'S WHETHER OR NOT

15   THE ACT OF SEARCHING THE CELL PHONES AT THE TIME, WHICH WOULD

16   HAVE BEEN ON JUNE 8TH, 2011, WHETHER THAT IN SOME FORM OR

17   FASHION TAINTS THE LATER OBTAINING OF A SEARCH WARRANT TO SEARCH

18   THE SAME PHONES.

19             THE COURT:  ALL RIGHT.  EVEN IF NOTHING OBTAINED FROM

20   THE INITIAL SEARCH WAS PROVIDED OR USED OR PLAYED ANY ROLE IN

21   THE ISSUANCE OF THE SEARCH WARRANTS?

22             MR. SADOW:  WELL, STRANGELY ENOUGH, YES, ALTHOUGH I'VE

23   GOT TO TELL YOU I HAVE BEEN UNABLE TO FIND A SITUATION THAT

24   MIRRORS OURS ANYWHERE.  THERE ARE ISSUES THAT COME UP, OF

25   COURSE, WITH INEVITABLE DISCOVERY, INDEPENDENT SOURCE, BUT NOT

1   THAT I CAN FIND IN WHICH, OUR CONTENTION, THE GOVERNMENT

2   RECOGNIZES THAT THERE MAY BE A FOURTH AMENDMENT ISSUE ON THE

3   SEARCH OF THE CELL PHONES AT THE SCENE, AND ATTEMPTS TO RECTIFY

4   THAT BY NOW OBTAINING A SEARCH WARRANT FOR THE SAME INFORMATION

5   THAT MAY HAVE BEEN OBTAINED UNLAWFULLY TO BEGIN WITH.  I HAVE

6   JUST NOT FOUND ONE IN WHICH THEY ESSENTIALLY HAVE TRIED TO, IN

7   MY OPINION, UNDO THE FOURTH AMENDMENT VIOLATION BY OBTAINING A

8   SEARCH WARRANT THAT UNDER OTHER CIRCUMSTANCES WOULD BE OTHERWISE

9   LEGITIMATE.

10        NOW, LET ME BACK OFF THAT FOR A SECOND BECAUSE I HAVE A

11  DUTY OF CANDOR TO THE COURT AND, THEREFORE, I WILL ATTEMPT TO

12  COMPLY WITH THAT.  AS FAR AS I CAN TELL, YOUR HONOR HAS HAD THE

13  SEARCH INCIDENT TO ARREST, SEARCH OF CELL PHONES SEIZED INCIDENT

14  TO ARREST, PREVIOUSLY AND IN FACT HAS PUBLISHED ON THAT, CASE

15  CALLED SALGADO, S-A-L-G-A-D-O.

16            THE COURT:  RIGHT.  I REMEMBER HIS NAME.

17            MR. SADOW:  2010 WESTLAW 3062, 440, WHICH WAS

18  ADOPTED -- YOUR R&R WAS ADOPTED BY JUDGE PANNELL.  AND IT WAS

19  ADOPTED AT 2010 WESTLAW 303, 5755.  AND I DARE SAY I DON'T

20  NECESSARILY AGREE WITH YOUR REASONING, BUT IT IS YOUR DECISION

21  AND IT HAS BEEN ADOPTED BY THE SAME TRIAL JUDGE THAT WE HAVE IN

22  THIS CASE.

23            THE COURT:  WAS IT THE VALIDITY OF LOOKING INTO THE

24  CELL PHONES --

25            MR. SADOW:  YEP.

 1              THE COURT:  -- AT THE TIME OF THE ARREST --

 2              MR. SADOW:  YEP.

 3              THE COURT:  -- WHERE THE -- IT WAS TESTIMONY THAT

 4   COULD HAVE BEEN A WEAPON?

 5              MR. SADOW:  NO.  IT WAS ACTUALLY MORE ALONG THE LINES

 6   THAT A CELL PHONE, UNLIKE SOME OTHER CONTAINER, STILL HAS THE

 7   POSSIBILITY TO HAVE BEEN DESTROYED, THAT IS, THE INFORMATION

 8   DESTROYED EVEN IF IT IS IN THE POSSESSION OF LAW ENFORCEMENT.

 9              THE COURT:  ALL RIGHT.  I DO REMEMBER THAT.  I'VE ALSO

10   HAD THE RATIONALE THAT IT HAS TO BE CHECKED AT LEAST ON THE

11   SURFACE TO SEE IF IT'S OPERATIVE TO MAKE SURE THAT IT'S NOT A

12   WEAPON -- THERE ARE CELL PHONE WEAPONS -- BUT THAT WOULD BE A

13   LESS INTRUSIVE CHECK THAN A COMPLETE SEARCH OF THE PHONE.

14              MR. SADOW:  AND THAT'S WHY I THINK I NEED TO MAKE A

15   RECORD OF WHAT THE PHONE -- WHAT ACTUAL SEARCH TOOK PLACE ON THE

16   DAY OF ARREST, DAY OF SEIZURE.

17              THE COURT:  ALL RIGHT.

18              MR. SADOW:  AND THEN YOUR HONOR WILL AT LEAST --

19   BECAUSE, AS IT STANDS NOW, I COULD EXPECT, EVEN IF THE

20   GOVERNMENT DIDN'T PURSUE IT, I COULD EXPECT THAT ISSUE TO COME

21   UP AT SOME POINT ON THE SEARCH INCIDENT TO ARREST, BUT I WANT TO

22   MAKE SURE THAT I AM PRESERVING --

23              THE COURT:  IN THIS CASE YOU MEAN?

24              MR. SADOW:  WELL, I MEAN, THINK -- YOU KNOW, I HATE TO

25   PUT IT THIS WAY, BUT LET'S ASSUME THAT THE GOVERNMENT SAYS, ALL

1   RIGHT.  WE THINK -- WE'LL GO ON THE SEARCH WARRANT, WE DON'T

2   HAVE TO GO ON THE SEARCH INCIDENT TO ARREST, AND YOU AGREE THAT

3   THE SEARCH WARRANT IS GOOD, AND I DON'T -- AND DON'T NECESSARILY

4   AGREE TO THE SEARCH INCIDENT TO ARREST, AND THEN JUDGE PANNELL

5   AGREES THE SEARCH WARRANT IS GOOD, AND THEN IT GOES UP ON

6   APPEAL -- BECAUSE UNFORTUNATELY I'M IN THAT ENVIRONMENT -- IT

7   WOULDN'T SURPRISE ME TO SEE SOMEONE THEN SAY, BY THE WAY, YOU

8   CAN KEEP -- YOU CAN ALSO FIND THIS TO BE LEGITIMATE AS A SEARCH

9   INCIDENT TO ARREST.  AND SINCE I'D HAVE NO RECORD, I WOULDN'T

10  WANT TO BE IN THAT POSTURE.

11          THE COURT:  ALL RIGHT.  IT'S KIND OF A REACH AS FAR AS

12  IT GETTING TO THAT POINT.

13          MR. SADOW:  WELL, I AGREE, BUT WITH THE ELEVENTH

14  CIRCUIT THE WAY IT IS HAVING JUST GRANTED EN BANC ON A CRACK

15  CASE IN WHICH THE JUSTICE DEPARTMENT NOW AGREES WITH THE DEFENSE

16  THAT THE FEDERAL SENTENCING REFORM ACT OUGHT TO BE APPLIED IN

17  RETROACTIVE FASHION ON CRACK, EVEN WITH THE GOVERNMENT AND THE

18  DEFENSE AGREEING TO IT, I DON'T THROW ANYTHING OUT AS IT BEING

19  UNREASONABLE IN THE ELEVENTH CIRCUIT.

20          THE COURT:  ALL RIGHT.  WELL, I UNDERSTAND.  IF YOU

21  GOT TO THAT POINT, IN ANY EVENT, THAT WOULD DENOTE HOLDING

22  WARRANTS PER SE ANYWAY --

23          MR. SADOW:  SO WHAT I'D LIKE TO DO IS CALL -- I THINK

24  I COULD PROBABLY DO IT THROUGH THE CASE AGENT.

25          THE COURT:  IN ANY OF THESE YOU -- EVEN IF, YOU KNOW,

1    WHAT I'VE PREVIOUSLY ANALYZED AS BEING NOT VIOLATIVE OF THE

2    FOURTH AMENDMENT, EVEN IF YOU DEMONSTRATE THAT, YOU'VE GOT TO

3    DEMONSTRATE THAT THAT IN TURN TAINTS IN SOME FASHION THE

4    WARRANT.

5            MR. SADOW:  WELL, I'M NOT -- THERE IS A D.C. CIRCUIT

6    CASE, 1992, THAT CAME UP IN A CIVIL FORFEITURE CONTEXT IN WHICH

7    THE D.C. CIRCUIT FRAMES THE ISSUE IN PART LIKE, HEY, THIS WOULD

8    JUST MEAN THAT THE GOVERNMENT COULD ALWAYS GO OUT AND GET A

9    SEARCH WARRANT ANYTIME IT DOES AN UNLAWFUL SEARCH INCIDENT TO

10   ARREST AS LONG AS THE EVIDENCE THAT THEY HAD AT THAT POINT IN

11   TIME WOULD HAVE ALLOWED THEM TO GET A SEARCH WARRANT.

12           THE COURT:  WELL, UNLAWFUL -- OKAY.  SEARCH INCIDENT

13   TO ARREST.  OF COURSE THE ASSUMPTION, I WOULD ASSUME, WOULD BE

14   THAT THE ACTUAL SEIZURE OF THE PHONES WAS NOT UNLAWFUL.

15           MR. SADOW:  NO, IT'S NOT.  AND THE ISSUE IS --

16           THE COURT:  WELL, THERE'S REALLY TWO STEPS.

17           MR. SADOW:  -- THEY SEIZE THE PHONES AND THEY DON'T

18   GET A SEARCH WARRANT, THEY LOOK, THEY SEARCH THE CONTENTS OF THE

19   PHONE --

20           THE COURT:  AND THEY DON'T HAVE TO FOLLOW IT.

21           MR. SADOW:  AND, YOU KNOW, THEY FIND THINGS THAT ARE

22   INTERESTING AND THEY WANT TO USE THEM, AND NOW THEY JUST SAY,

23   OH, WE DID SEARCH IT ILLEGALLY, BUT THERE'S NO PROBLEM BECAUSE

24   WE CAN NOW GO BACK AND RESURRECT IT WITH EVIDENCE WE ALREADY

25   HAD.  NO PROBLEM.  THANK YOU FOR CALLING OUR ATTENTION TO IT,

1  THAT WE MAY HAVE DONE AN ILLEGAL SEARCH, AND WE'VE NOW GOTTEN A

2  SEARCH WARRANT.  THAT'S THE ISSUE.  AND THAT ISSUE IS NOT

3  ADDRESSED ANYWHERE IN THE EXCLUSIONARY RULE CONTEXT.  BECAUSE,

4  AS YOU CAN IMAGINE, AT LEAST FROM MY PERSPECTIVE, THE GOVERNMENT

5  COULD -- THERE'S NO REASON WHY THEY WOULDN'T SEARCH EVERYTHING

6  UNDER THOSE CIRCUMSTANCES AND THEN JUST GO BACK AND SAY, OKAY,

7  I'LL GET A NEW SEARCH WARRANT AND I'LL JUST GO BACK AND FIND

8  EVERYTHING THAT I HAD PREVIOUSLY AND PUT IT IN THE SEARCH

9  WARRANT.  WHY NOT TAKE THE CHANCE?  WHY TAKE THE RISK -- WHY NOT

10 TAKE THE RISK?  THAT'S WHAT'S UNUSUAL ABOUT THIS SITUATION.

11 IT'S NOT THAT THE GOVERNMENT WENT OUT AND GOT A SEARCH WARRANT

12 AT THE EARLY STAGE OF THE INVESTIGATION, AT THE POINT IN TIME OF

13 THE INVESTIGATION.  IT'S WE'RE IN THE CONTEXT OF, I FILE A

14 MOTION, DO A LITTLE RESEARCH, SEE THERE COULD BE AN ISSUE WITH

15 SEARCH INCIDENT TO ARREST, THE GOVERNMENT SAYS, OKAY.  THAT'S

16 FINE.  WE DON'T HAVE TO GO ON THAT GROUND.  WE CAN JUST GO AND

17 GET A SEARCH WARRANT.

18           THE COURT:  THE GOVERNMENT STILL HAS THE PHONE.

19           MR. SADOW:  YEAH, OF COURSE.

20           MS. TARVIN:  WE STILL HAVE THE PHONES, YES, YOUR

21 HONOR.  AND A COUPLE OF THINGS, NUMBER ONE, BY GOING AND GET THE

22 SEARCH WARRANT, I WANT THE RECORD TO REFLECT THAT THE GOVERNMENT

23 IS NOT SAYING THAT ITS INITIAL SEARCH --

24           THE COURT:  NOT CONCEDING THAT.  I UNDERSTAND.

25           MS. TARVIN:  NOT CONCEDING THAT ITS INITIAL SEARCH WAS

1    UNLAWFUL.  SECOND OF ALL, THE SEARCHES WERE DIFFERENT.  AT THE

2    TIME THAT THEY WERE SEIZED, THE AGENTS READ -- OPENED THEM UP,

3    WROTE -- HANDWROTE NUMBERS DOWN.  THEY DIDN'T HAVE WHAT THEY

4    COMMONLY CALL A CELL BRITE ON THE SCENE WHICH DOES THE

5    DOWNLOADING.  THAT DOWNLOADING WAS ONLY DONE AFTER THE SEARCH

6    WARRANTS WERE OBTAINED, AND THERE WAS --

7           THE COURT:  SO THERE WAS A FULLER SEARCH OR A MORE

8    INTRUSIVE SEARCH --

9           MS. TARVIN:  YES, AND A LOT MORE --

10          THE COURT:  -- LATER.

11          MS. TARVIN:  YES.  A LOT MORE INFORMATION WAS

12   GATHERED.

13          THE COURT:  BUT STILL THERE WAS A SEARCH.

14          MS. TARVIN:  YES.  THERE WAS A SEARCH AT THE SCENE.

15   I'M HAVING A HARD TIME IN MY MIND REASONING WHY WE'RE HAVING A

16   HEARING, THOUGH, ON -- WHEN CLEARLY THERE IS NO CASE LAW TO

17   SUPPORT MR. SADOW'S CONTENTION -- AND THERE ARE THE SEARCH

18   WARRANTS THAT ARE IN PLACE, AND IN FACT IN THE MOTION -- I MEAN,

19   IN THE WARRANTS THEMSELVES OR IN THE AFFIDAVIT IT SAYS NOTHING

20   HAS BEEN USED -- WITHOUT MR. SADOW HAVING SOMETHING MORE TO SAY

21   THERE IS A REASON THAT HE BELIEVES -- SPECIFIC REASON THAT HE

22   BELIEVES THAT THEY ARE TAINTED.

23          THE COURT:  I'M HAVING A LITTLE BIT OF PROBLEM SEEING

24   THAT TOO.

25          MR. SADOW:  WELL, I CERTAINLY HAVE -- WITHOUT -- IF

1   THE GOVERNMENT'S POSITION IS WE ARE NOT CONCEDING THAT THERE WAS

2   AN ILLEGAL SEARCH TO BEGIN WITH, THEN I THINK I'M AT LEAST

3   ENTITLED TO INTRODUCE EVIDENCE AS TO WHAT THE EXTENT OF THAT

4   SEARCH WAS SO THAT I CAN HAVE A DETERMINATION MADE AS TO WHETHER

5   THAT SEARCH WAS ILLEGAL.  JUST BECAUSE I DON'T HAVE CASE LAW

6   THAT SAYS YOU CAN'T GO GET A SEARCH WARRANT AFTER YOU PERFORMED

7   AN ILLEGAL SEARCH DOESN'T MEAN THAT IT ISN'T A LEGAL ISSUE THAT

8   IS RIPE FOR CONSIDERATION.  AS I WAS SAYING BEFORE, THERE IS A

9   D.C. CASE IN WHICH IT IS ALLUDED TO THAT THERE'S SOMETHING WRONG

10  WITH THAT.  AND JUST BECAUSE THE GOVERNMENT MAY NOT -- AS I

11  SAID, I CAN'T FIND A CASE IN WHICH THE GOVERNMENT ACTUALLY WENT

12  TO GET A SEARCH WARRANT UNDER CIRCUMSTANCES AT ALL LIKE THIS, IN

13  FACT UNDER ANY SUCH CIRCUMSTANCES, DOESN'T MEAN THAT THERE ISN'T

14  AN ISSUE THAT IS WORTH CONSIDERING AND DEFINITELY PRESERVING.

15  IF THE COURT SAYS, YOU KNOW, AS FAR AS I'M CONCERNED IF YOU

16  CAN'T --

17          THE COURT:  BUT AREN'T THERE PLENTY OF CASES WHERE THE

18  GOVERNMENT MAY HAVE GONE IN WITHOUT AUTHORIZATION IN CONNECTION

19  WITH SOMETHING, AND THEN HAS WITHDRAWN, LEFT, AND GONE BACK TO

20  THE COURT AND OBTAINED A SEARCH WARRANT, THEN RETURN TO THE

21  PREMISES?  IN THOSE CASES THE ISSUE IS WHETHER ANYTHING THAT

22  THEY MAY HAVE SEEN OR INFORMATION THEY MAY HAVE OBTAINED THROUGH

23  THE ILLEGAL ACTIONS WERE INCLUDED OR RELIED ON IN THE OBTAINING

24  OF THE WARRANT.  AND I BELIEVE THERE ARE CASES ON THAT.  THAT'S

25  JUST A STRAIGHT, YOU KNOW, FRANKS KIND OF A --

1           MR. SADOW:  YEAH.  AND THE REASON I SAY --

2           THE COURT:  WHY ISN'T THIS JUST LIKE THAT?

3           MR. SADOW:  BECAUSE WE'RE IN A -- THERE'S AN

4  INDICTMENT.  WE'RE IN A MOTION TO SUPPRESS, MOTION FILED, THEN

5  THE GOVERNMENT -- THERE'S ISSUE ABOUT LEGALITY OF THE SEARCH.

6           THE COURT:  SO THERE'S A TIME GAP.

7           MR. SADOW:  ABSOLUTE TIME GAP.

8           THE COURT:  HOW LONG WAS IT?

9           MR. SADOW:  SEPTEMBER -- JUNE 8TH, 2011 IS WHEN THEY

10  SEIZED THE PHONES AND DID WHATEVER SEARCH --

11           THE COURT:  AND THE WARRANT WAS ISSUED WHEN, AUGUST?

12           MR. SADOW:  SEPTEMBER 7TH.

13           THE COURT:  SEPTEMBER.  SO, LIKE, SOME THREE MONTHS.

14           MR. SADOW:  AND AFTER -- I MEAN, TO THE EXTENT THAT I

15  NEED TO INTRODUCE IT, AFTER E-MAIL COMMUNICATIONS BACK AND FORTH

16  IN WHICH I BRING TO THE GOVERNMENT'S ATTENTION THAT I THINK THE

17  SEARCH IS ILLEGAL.

18           THE COURT:  OKAY.  I'M NOT SURE IT MAKES ANY

19  DIFFERENCE, BUT WE'RE HERE.  I'M GOING TO GO AHEAD -- LET'S GO

20  AHEAD AND HEAR THE CIRCUMSTANCES OF THE ARREST, AND YOU CAN

21  ARTICULATE YOUR ARGUMENTS IN A BRIEF.

22           MR. SADOW:  OKAY.

23           THE COURT:  I MEAN, THERE'S AT LEAST ENOUGH OF

24  SOMETHING HERE THAT I CAN'T SAY THAT I'M GOING TO DENY YOU A

25  HEARING ON THAT PORTION OF IT, ALTHOUGH IT DOES STILL -- I DON'T

1  KNOW.  I MEAN, THE ONLY THING THAT GIVES ME PAUSE WOULD BE IS IF

2  THERE WAS A SUFFICIENTLY LONG DELAY BETWEEN THE SEIZURE OF THE

3  PROPERTY AND THE OBTAINING OF THE WARRANT THAT MIGHT IN SOME WAY

4  COME INTO PLAY AS A FACTOR.  OTHERWISE, IF THE WARRANT IS VALID,

5  THEN IT'S HARD FOR ME TO SEE WHY -- HOW YOU WOULD BE ENTITLED TO

6  ANY RELIEF, BUT --

7          MS. TARVIN:  YOUR HONOR.

8          THE COURT:  YES.

9          MS. TARVIN:  ANOTHER SCENARIO, THOUGH, IS A LOT OF

10  TIMES THE GOVERNMENT DOESN'T GET A SEARCH WARRANT FOR THE

11  CONTENTS OF A PHONE 'TIL THEY GET READY -- THEY -- EVERYBODY'S

12  PLED OUT AND WHATEVER, AND THEN THEY'RE GETTING READY TO GO TO

13  TRIAL AND THEY SEE, OH, WE HAVE -- WE'VE GOT THESE PHONES,

14  LET'S -- YOU KNOW, WE NEED TO SEARCH THEM, WE GO AND GET A

15  SEARCH WARRANT.  SO SOMETIMES THERE'S A MUCH GREATER TIME SPAN

16  BETWEEN THE ARREST AND WHEN THE GOVERNMENT GOES TO GET A SEARCH

17  WARRANT FOR THE DATA WITHIN THE PHONE.  A LOT OF TIMES IT --

18          THE COURT:  THE PHONES THAT THEY ALREADY HAVE.

19          MS. TARVIN:  THAT THEY ALREADY HAVE.

20          THE COURT:  THEY'VE BEEN SEIZED, YOU KNOW, AND THEY'RE

21  STILL HOLDING THIS PROPERTY WITHOUT ANY -- WHAT AUTHORITY ARE

22  THEY HOLDING THE PROPERTY ON?

23          MS. TARVIN:  WELL, WE TYPICALLY ARE HOLDING THEM AS

24  INSTRUMENTALITIES OF THE CRIME BECAUSE TYPICALLY THEY'RE SEIZED

25  DURING A WIRETAP INVESTIGATION.

1          THE COURT:  OKAY.  THAT WOULD BE ONE WAY THAT YOU

2  COULD HAVE POSSESSION OF THOSE THINGS.  IN THIS CASE --

3          MS. TARVIN:  WELL, SAME THING.  THIS IS A WIRETAP

4  CASE.  AND I THINK THE SEARCH WARRANT AFFIDAVIT THAT YOUR HONOR

5  REVIEWED TALKED ABOUT IT BEING A SEARCH WARRANT --

6          THE COURT:  THAT WOULD BE PROBABLE CAUSE TO SEIZE IT

7  AND TO SEARCH IT.

8          MS. TARVIN:  YES.

9          THE COURT:  YOU KNOW, INSOFAR AS THE WARRANT IS

10  CONCERNED.

11          MS. TARVIN:  YES.

12          THE COURT:  BUT THE INITIAL SEIZURE, THOUGH, WAS SOME

13  MONTHS BEFORE THAT INCIDENT TO ARREST.

14          MS. TARVIN:  INCIDENT TO ARREST.

15          THE COURT:  YEAH.  ALL RIGHT.  YEAH, WE'LL GO AHEAD

16  AND HEAR THE CIRCUMSTANCES OF THE ARREST.

17          MS. TARVIN:  OKAY.

18          THE COURT:  AND THEN EVERYTHING ELSE WILL BE BRIEFS.

19          MR. SADOW:  YEAH, EVEN -- WE'RE TALKING ABOUT -- WE'RE

20  TALKING ABOUT 20 MINUTES WORTH OF TESTIMONY AT MOST.

21          THE COURT:  RIGHT.  I UNDERSTAND.  THAT'S PART OF WHY

22  WE'VE TALKED ABOUT IT LONG ENOUGH THAT WE COULD HAVE MADE A

23  RECORD.  NONETHELESS, LET'S GO AHEAD AND HEAR THAT, THOSE

24  CIRCUMSTANCES, AND THEN I'LL GIVE YOU AN OPPORTUNITY, MR. SADOW,

25  TO TRY TO FORMULATE THIS ARGUMENT ON PAPER SO THAT I CAN GIVE

1   YOU YOUR BEST SHOT AT IT, LET'S PUT IT THAT WAY.

2          MR. SADOW:  CERTAINLY SOUNDS REASONABLE TO ME.

3          THE COURT:  ALL RIGHT.  THEN --

4          MS. TARVIN:  WHO'S GOING?  DO I GO FIRST?

5          MR. SADOW:  IT DEPENDS ON WHAT -- I MEAN, YOU ALWAYS

6   GO FIRST IF YOU CHOOSE TO.

7          MS. TARVIN:  WELL, I'M GOING TO ON BEHALF OF THE

8   GOVERNMENT SEEK TO INTRODUCE GOVERNMENT'S EXHIBITS 1 WHICH IS

9   THE AFFIDAVIT IN SUPPORT OF THE APPLICATION FOR THE SEARCH

10  WARRANT; GOVERNMENT'S EXHIBITS 1A, 1B, AND 1C WHICH ARE THE

11  ACTUAL FACE PAGES OF THE APPLICATION FOR THE SEARCH WARRANTS,

12  SEARCH WARRANT NUMBERS WERE CASE 1:11-MJ-1371 WHICH IS EXHIBIT

13  1A; 1372 WHICH IS 1B; AND 1373 WHICH IS 1C; AND THEN THE SEARCH

14  WARRANTS THEMSELVES WHICH ARE GOVERNMENT'S EXHIBITS 2, 3, AND 4.

15  THE GOVERNMENT WOULD TENDER THESE INTO EVIDENCE.

16         THE COURT:  ALL RIGHT.

17         MR. SADOW:  NO OBJECTION FOR PURPOSES OF THIS HEARING.

18         THE COURT:  ALL RIGHT.  THEN THEY ARE ADMITTED.

19         MR. SADOW:  GOT ANYTHING ELSE?

20         MS. TARVIN:  GOT IT -- NOTHING.  GO, MR. SADOW.

21         THE COURT:  WELL, SOMEBODY NEEDS TO CALL THE OFFICER.

22         MR. SADOW:  I'D BE MORE THAN HAPPY TO.  I MEAN, I CAN

23  CROSS-EXAMINE, AND MY WITNESS OR NOT, BECAUSE IT'S A LAW

24  ENFORCEMENT AGENT UNDER THE SUPPRESSION HEARING --

25         THE COURT:  WELL, I ASSUME YOU HAVE THE ARRESTING

1  OFFICER HERE.

2          MS. TARVIN:  YES, HE'S SITTING RIGHT HERE.

3          THE COURT:  ALL RIGHT.

4          MR. SADOW:  ALL RIGHT.  SO THE GOVERNMENT ESSENTIALLY

5  HAS RESTED AT THIS HEARING, AND I NOW FOR THE DEFENSE CALL

6  SPECIAL AGENT MALLOY.

7              (WITNESS SWORN.)

8          COURTROOM DEPUTY CLERK:  PLEASE HAVE A SEAT AND STATE

9  YOUR FULL NAME FOR THE RECORD AND SPELL YOUR LAST NAME FOR US.

10          THE WITNESS:  GREGORY DEAN MALLOY, M-A-L-L-O-Y.

11                  GREGORY DEAN MALLOY

12       CALLED AS A WITNESS BY THE DEFENDANT, AFTER HAVING

13        BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

14                  DIRECT EXAMINATION

15  BY MR. SADOW:

16  Q.   AGENT MALLOY, HOW ARE YOU EMPLOYED?

17  A.   I'M A SPECIAL AGENT WITH THE DRUG ENFORCEMENT

18  ADMINISTRATION.

19  Q.   AND HOW LONG HAVE YOU BEEN A SPECIAL AGENT WITH D.E.A.?

20  A.   APPROXIMATELY 20 YEARS.

21  Q.   I'M GOING TO TAKE YOU BACK -- I'M GOING TO DO THIS AS QUICK

22  AS I CAN.  ON JUNE 8TH, 2011, DID YOU HAVE OCCASION TO DETAIN

23  AND ARREST THE DEFENDANT, MR. SHAW?

24  A.   YES.

25  Q.   AT THE TIME MR. SHAW WAS DETAINED AND ARRESTED, WHERE WAS

1    HE LOCATED?

2    A.    HE WAS IN A VEHICLE, A TRUCK THAT WAS PARKED AT HIS

3    RESIDENCE AT 4262 DERBY LOOP LANE.

4    Q.    I'M NOT GOING TO CONCEDE HIS RESIDENCE, BUT HE WAS AT A

5    RESIDENCE AND HE WAS AT A VEHICLE INSIDE -- OR HE WAS INSIDE THE

6    VEHICLE?

7    A.    YES.

8    Q.    ALL RIGHT.  AND WERE THE DOORS TO THE VEHICLE CLOSED, OPEN?

9    A.    CLOSED.

10    Q.    OKAY.  AND WAS THE -- TO YOUR VANTAGE POINT WAS THE

11    IGNITION ON?

12    A.    YES, IT WAS.

13    Q.    ALL RIGHT.  HOW DID YOU EFFECTUATE HIS DETENTION AND

14    ARREST, MR. SHAW'S?

15    A.    MYSELF AND OTHER AGENTS, WE APPROACHED THE VEHICLE.  I

16    APPROACHED THE PASSENGER -- THE DRIVER SIDE OF THE VEHICLE, AND

17    I TOLD MR. SHAW TO PUT HIS HANDS UP.  I HAD MY WEAPON DRAWN.

18    THE OTHER AGENT WENT TO THE PASSENGER SIDE, AND I ASKED MR. --

19    MR. SHAW TO GET OUT OF THE CAR.

20    Q.    ALL RIGHT.  AND UPON BEING ASKED TO GET OUT OF THE CAR,

21    WHAT DID MR. SHAW DO?

22    A.    HE EXITED THE VEHICLE AND WE PLACED HIM UNDER ARREST.

23    Q.    IN PLACING HIM UNDER ARREST, DID YOU IN SOME WAY RESTRICT

24    OR CURTAIL HIS LIBERTY?  DID YOU PUT HANDCUFFS ON HIM?

25    A.    YES, WE DID.

```
1    Q.   IN FRONT OF HIM, BEHIND HIM?

2    A.   BEHIND HIM.

3    Q.   ALL RIGHT.  AND DID YOU DO A PAT-DOWN OR SOME OTHER SEARCH

4    AT THE TIME YOU TOOK HIM INTO CUSTODY?

5    A.   YES.

6    Q.   WHAT DID YOU DO?

7    A.   WE DID A PAT-DOWN OF HIS BODY, AND AGENT DAILY SEIZED THREE

8    CELL PHONES FROM HIS PERSON -- OR HIS POCKETS, RATHER.

9    Q.   OKAY.  AND THREE CELLS PHONES ARE N-317, THAT'S WHAT YOU

10   ALL HAVE DESIGNATED THEM?

11   A.   YES.

12   Q.   CAN YOU TELL US, IF POSSIBLE, WHAT CELL PHONE WAS FOUND IN

13   WHAT POCKET?

14   A.   I DON'T REMEMBER, SIR.

15   Q.   IS THERE ANYTHING THAT ACTUALLY RECORDED THAT?

16   A.   NO.

17   Q.   OKAY.  WERE THEY FRONT POCKETS, BACK POCKETS --

18   A.   HE --

19   Q.   -- JACKET POCKETS, WERE THEY TROUSER POCKETS?

20   A.   HE HAD ON SOME SHORTS, CARGO SHORTS, AND THE PHONES WERE IN

21   THE SIDE POCKETS, THE LOWER SIDE POCKETS.

22   Q.   ALL RIGHT.  SO THE PHONES, IF I UNDERSTAND CORRECTLY, AND

23   I'M GOING TO JUST CALL THEM N-317 WHICH IS THREE CELL PHONES;

24   CORRECT?

25   A.   YES.
```

1  Q.  THE THREE CELL PHONES, N-317, THEY WERE SEIZED AT THE ACTUAL

2  TIME THAT MR. SHAW WAS TAKEN INTO CUSTODY --

3  A.  THAT'S CORRECT.

4  Q.  -- RIGHT?

5  A.  YES.

6  Q.  OKAY.  AND WHO SEIZED THEM?

7  A.  T.F.O. MIKE DAILY.

8  Q.  ALL RIGHT.  AND WHAT DID T.F.O. MIKE DAILY DO WITH THE

9  PHONES UPON MR. SHAW BEING HANDCUFFED?

10 A.  HE TURNED THEM OVER TO ME.

11 Q.  ALL RIGHT.  AND WHAT DID YOU DO WITH THE PHONES IN RELATION

12 TO THE TIME, NOW, MR. SHAW'S BEEN HANDCUFFED?

13 A.  I TURNED THE PHONES OVER TO T.F.O LEONARD PURVINES, AND

14 T.F.O LEONARD PURVINES DID THE INVENTORY OF THE PHONES.  HE WENT

15 THROUGH THE PHONES AND WROTE DOWN THE NUMBERS IN THE PHONES.

16 Q.  ALL RIGHT.  LET'S BREAK THIS DOWN --

17         THE COURT:  HOW DO YOU SPELL THAT T.F.O PURVINE?

18         THE WITNESS:  YES.  P-U-R-V-I-N-E-S.

19         THE COURT:  ALL RIGHT.

20 BY MR. SADOW:

21 Q.  WHEN THE PHONES ACTUALLY GO INTO THE POSSESSION OR CUSTODY

22 OF T.F.O. PURVINES --

23 A.  YES.

24 Q.  -- IS MR. SHAW STILL OUT ON THE STREET OR THE DRIVEWAY, OR

25 HAS HE BEEN PLACED IN A VEHICLE AT THIS POINT?

```
 1   A.   HE'S ON THE STREET.

 2   Q.   OKAY.  IS HE ON THE GROUND OR IS HE UP?

 3   A.   HE'S UP.

 4   Q.   OKAY.  HANDCUFFED?

 5   A.   YES.

 6   Q.   AND THE PHONE -- AND TASK FORCE AGENT PURVINES IS WHERE

 7   WITH THE PHONES, THE CELL PHONES, N-317, WHEN HE BEGINS TO DO

 8   HIS INVENTORY?

 9   A.   HE TAKES THE PHONES INSIDE THE RESIDENCE.

10   Q.   ALL RIGHT.  SO PURVINES TAKES THE PHONES INSIDE THE

11   RESIDENCE; RIGHT?

12   A.   YES.

13   Q.   IS SHAW STILL OUTSIDE?

14   A.   YES.

15   Q.   OKAY.  AND DO YOU SEE PURVINES DO HIS INVENTORY?

16   A.   SOME OF IT, NOT THE ENTIRE INVENTORY.

17   Q.   ALL RIGHT.  DO YOU -- DID YOU TELL HIM TO DO AN INVENTORY?

18   A.   YES.

19   Q.   OKAY.  AND UNDER WHAT -- I MEAN, WHY DID YOU TELL HIM TO DO

20   AN INVENTORY?

21   A.   ACCORDING TO CASE LAW, WE'RE ALLOWED TO SEARCH THE PHONES

22   SEARCH INCIDENT TO ARREST ON THE SCENE.

23   Q.   OKAY.  SO AT THAT TIME YOU BELIEVED THE LAW ALLOWED YOU TO

24   SEARCH THE CELL PHONES?

25   A.   AT THE SCENE.
```

1   Q.   AT THE SCENE?

2   A.   RIGHT.

3   Q.   AND WHEN WE'RE TALKING ABOUT THE INVENTORY, GIVE US A BIT

4   MORE DESCRIPTION.  I'M ASSUMING IT WAS DONE THE SAME WAY WITH

5   EACH PHONE?

6   A.   YES.

7   Q.   OKAY.  AND WHAT DID YOU DO?  DO YOU TURN THE CELL PHONE ON?

8   A.   YES.  FIRST HE TURNS IT ON.  IF IT'S NOT ON, THEN HE PULLS

9   THE ACTUAL CELL PHONE NUMBER OF THAT PHONE FIRST, AND THEN --

10  Q.   HOW -- WHEN YOU SAY HE PULLS IT, WE NEED TO BE CLEAR AS CAN

11  BE FOR THE RECORD.  WHAT DO YOU MEAN, "PULLS IT?"

12  A.   SURE.  YOU HAVE TO GO TO PULL "MY INFORMATION" ON EACH CELL

13  PHONE.

14  Q.   OKAY.

15  A.   IT SAYS "MY INFORMATION," AND THEN IT WILL TAKE YOU TO THE

16  ACTUAL PHONE NUMBER OF THAT PHONE.

17  Q.   OKAY.

18  A.   AND THEN HE PULLS THAT FIRST.  THEN THE SECOND THING HE

19  DOES IS BEGIN TO WRITE DOWN THE PHONE NUMBERS IN THE CONTACT

20  LIST.

21  Q.   AND TO YOUR KNOWLEDGE -- AND, AGAIN, THIS IS HEARSAY, BUT

22  I'M TRYING TO GET THROUGH IT, IF YOU KNOW.  TASK FORCE AGENT OR

23  OFFICER PURVINES WROTE DOWN FOR EACH PHONE ALL OF THE CONTACT

24  INFORMATION THAT WAS ON THE PHONE?

25  A.   CORRECT.

1   Q.    OKAY.   AND HE'S DOING THAT NOW AS HE IS IN THE RESIDENCE?

2   A.    THAT'S CORRECT.

3   Q.    DOES TASK FORCE OFFICER PURVINES OBTAIN ANY OTHER

4   INFORMATION AT THIS TIME?

5   A.    THE NAME AND THE PHONE NUMBER IS THE ONLY THING THAT HE

6   COULD PULL AT THE TIME BECAUSE WE DIDN'T HAVE A CELL BRITE.

7   Q.    OKAY.   JUST SO THE RECORD REFLECTS, WHAT IS A -- IS IT

8   CELL, C-E-L-L, B-R-I-G-H-T, OR B-R-I-T-E?

9   A.    T-E.

10  Q.    OKAY.   AND WHAT IS A CELL BRITE?

11  A.    IT'S A ELECTRONIC DEVICE THAT ALLOWS US TO DOWNLOAD PHONES,

12  DOWNLOAD THE INFORMATION ON A CELL PHONE.   THE INFORMATION THAT

13  WE CAN OBTAIN WITH A CELL BRITE IS WE CAN GET THE TEXT MESSAGES

14  OR THAT TYPE INFORMATION ALONG WITH THE ACTUAL PHONE NUMBERS ON

15  THE CONTACT LIST.

16  Q.    OKAY.   AND YOU DON'T HAVE A CELL BRITE ON THE SCENE ON JUNE

17  8TH, AND, THEREFORE, YOU DON'T USE A CELL BRITE ON EITHER OR ANY

18  OF THOSE PHONES?

19  A.    RIGHT.   THAT'S CORRECT.

20  Q.    THE INVENTORY HAS GIVEN YOU THE NAME, THE TELEPHONE NUMBER,

21  AND THE CONTACT INFORMATION ON EACH PHONE?

22  A.    THE INVENTORY FROM PURVINES OR THE CELL BRITE?

23  Q.    PURVINES.

24  A.    RIGHT.   HE GIVES US THE PHONE NUMBER.   HE GIVES US THE

25  PHONE NUMBERS THAT ARE BEING CALLED BY THAT PHONE.   AND IT ALSO

1    GIVES US THE NAMES ASIDE THE PHONE NUMBERS THAT ARE BEING CALLED

2    BY YOUR CLIENT.

3    Q.   ALL RIGHT.  WELL, THIS IS WHAT I'M -- DO YOU -- DOES HE

4    ACTUALLY LIST ALL THE INCOMING AND OUTGOING CALLS THAT ARE STILL

5    REFLECTED ON THE PHONE WHEN HE IS DOING HIS INVENTORY ON

6    JUNE 8TH?

7    A.   I DON'T KNOW IF HE DID IT THIS TIME, BUT HE PULLED THE

8    CONTACTS, THE NAMES ON THE CONTACTS, ON YOUR CONTACT LIST, HE

9    PULLED ALL THE NAMES AND THE PHONE NUMBERS THAT GO WITH THOSE

10   CONTACTS.

11   Q.   ALL RIGHT.  BUT AS FAR AS YOU'RE -- YOU DON'T KNOW WHETHER

12   HE ACTUALLY OBTAINED, THAT IS, AGENT PURVINES, ACTUALLY OBTAINED

13   ON THAT DATE, JUNE 8TH, ALL OF THE INFORMATION ABOUT INCOMING

14   CALLS OR OUTGOING CALLS OR TEXT MESSAGES THAT MIGHT HAVE STILL

15   BEEN ON THE PHONE?

16   A.   WELL, HE DIDN'T GET THE TEXT MESSAGES BECAUSE HE SAID HE

17   DIDN'T GET THE TEXT MESSAGES.  HE COULDN'T GET TEXT.  BUT IN

18   TERMS OF --

19   Q.   WHY COULDN'T HE GET TEXT MESSAGES?

20   A.   THE TEXT MESSAGES, I'M NOT SURE.  I'M NOT SURE WHY, BUT HE

21   SAID HE COULDN'T GET THE TEXT MESSAGES ON THAT.

22   Q.   OKAY.  AND THAT'S ON ALL THREE PHONES?

23   A.   THAT'S CORRECT.

24   Q.   ALL RIGHT.  AND WHY DID -- DID HE ATTEMPT TO GET THE

25   INCOMING AND OUTGOING CALLS THAT WERE STILL SHOWN ON THE PHONE?

```
1   A.   NOW, THAT, I DON'T KNOW.

2   Q.   OKAY.  SO AS TO THE LAST COUPLE OF QUESTIONS, AGENT

3   PURVINES WOULD ACTUALLY HAVE TO TELL US THAT?

4   A.   RIGHT.

5   Q.   AND I DON'T KNOW WHICH GENTLEMAN.  IS HE HERE?

6   A.   YES, HE IS.

7   Q.   ALL RIGHT.  NO PROBLEM.  SO ANYTHING MORE THAT YOU CAN TELL

8   US ABOUT THE INVENTORY PROCEDURE OR PROTOCOL THAT WAS USED ON

9   JUNE 8TH?

10  A.   NO.  WE TOOK THE PHONES OFF YOUR CLIENT.  WE INVENTORIED

11  IT, LIKE, SOON AFTER WE ARRESTED HIM, AND THAT'S IT.

12  Q.   I MEAN, SOON AFTER SUGGESTS -- WE'RE TALKING ABOUT WITHIN,

13  WHAT, AN HOUR AFTER THE ARREST?

14  A.   NO.  SEVERAL MINUTES.

15  Q.   SEVERAL MINUTES.

16  A.   RIGHT.  MAYBE FIVE MINUTES AFTERWARDS.

17  Q.   OKAY.  AND THEN WHAT IS -- WAS A REPORT PREPARED ON THE

18  INFORMATION THAT WAS OBTAINED FROM THE INVENTORY ON THAT DAY?

19  A.   YES.  A COPY WAS GIVEN, TURNED OVER TO YOU IN DISCOVERY,

20  YES.

21  Q.   OF THE INVENTORY THAT WAS DONE ON THE THREE CELL PHONES?

22  A.   YES.  IT'S A HANDWRITTEN LIST, YES.

23  Q.   OKAY.  SO THE ANSWER IS THAT HANDWRITTEN LIST WOULD HAVE

24  BEEN PROVIDED TO WHOM?

25  A.   TO THE PROSECUTOR.
```

1    Q.    WHEN?

2    A.    SHORTLY AFTER, I DON'T KNOW, A FEW DAYS AFTER THE ARREST.

3    Q.    ALL RIGHT.  IF JUNE 8TH, 2011 IS THE ARREST, WE'RE TALKING

4    ABOUT, WHAT, BY THE END OF JUNE?

5    A.    SOMETIME IN JUNE, YES.

6    Q.    OKAY.  ALL RIGHT.  AND WHAT, IF ANYTHING, DO YOU DO WITH

7    THAT CONTACT INFORMATION?

8    A.    I DIDN'T DO ANYTHING WITH THE CONTACT INFORMATION.  I NEVER

9    LOOKED AT THE CONTACT INFORMATION OF THE PHONE.

10   Q.    OKAY.  WHAT DID ANY OF THE OTHER AGENTS DO WITH THE CONTACT

11   INFORMATION?

12   A.    FOR THAT PARTICULAR DAY?

13   Q.    NOT THAT DAY, ANYTIME.  PRIOR TO SEPTEMBER 7TH OF 2011,

14   WHAT DID ANYBODY DO WITH THAT CONTACT INFORMATION?

15   A.    AS FAR AS I KNOW, NOTHING.  AGENT PURVINES, HE PLACED THE

16   INFORMATION IN A EVIDENCE BAG.  WE MADE COPIES FOR THE

17   PROSECUTOR, AND --

18   Q.    COPIES OF THE --

19   A.    COPIES OF THE INVENTORY, THE HANDWRITTEN INVENTORY.  WE

20   PLACED IT IN THE EVIDENCE BAG AND WE PLACED THE EVIDENCE BAG IN

21   THE VAULT.

22   Q.    OKAY.  AND THAT'S ON ALL THREE PHONES?

23   A.    THAT'S CORRECT.

24   Q.    YOU PROBABLY CANNOT ANSWER THIS, BUT DO YOU KNOW WHAT USE

25   WAS MADE OF THE CONTACT INFORMATION TURNED OVER TO THE

1  PROSECUTOR BY THE PROSECUTOR?

2  A.   NO.  YOU'RE SAYING THE CONTACT INFORMATION?

3  Q.   MM-HUM.

4  A.   IT WAS PROVIDED TO YOU AS FAR AS I KNOW.  THAT'S ALL.

5  Q.   AND HOW WERE YOU ALERTED TO DO SOMETHING ELSE WITH THOSE

6  PHONES AT A LATER DATE?

7  A.   WE HAD A DISCUSSION ABOUT IT, ABOUT THE PHONE IN TERMS OF

8  MAYBE WE SHOULD GET A SEARCH WARRANT.

9  Q.   OKAY.  I DON'T KNOW WHETHER THIS IS COVERED BY PRIVILEGE OR

10  NOT.  DO YOU WANT TO TELL US WHAT THAT CONVERSATION WAS?

11          THE COURT:  I'M NOT HEARING AN OBJECTION.  I DON'T

12  SEE -- I CAN'T SEE MS. TARVIN.

13          MR. SADOW:  I'M SORRY.

14          THE COURT:  NO OBJECTION.  YOU CAN ANSWER IT.

15          THE WITNESS:  THE PROSECUTOR DECIDED AT THAT MOMENT

16  IT'S PROBABLY JUST A GOOD IDEA TO GET A SEARCH WARRANT.

17  BY MR. SADOW:

18  Q.   WELL, SHE MUST HAVE SAID SHE HAD SOME CONVERSATION WITH

19  DEFENSE COUNSEL AND THERE WAS SOME ISSUE TO THE --

20          MS. TARVIN:  I'M GOING TO OBJECT AS TO HIM --

21          THE COURT:  YOU CAN ASK HIM WHAT HE SAYS.

22          MR. SADOW:  I MEAN, I CAN LEAD.

23          THE COURT:  SOMEWHAT, BUT THERE MUST BE -- MUST HAVE

24  BEEN.  I MEAN, JUST ASK HIM --

25

1  BY MR. SADOW:

2  Q.   WAS THERE A CONVERSATION IN WHICH IT WAS BROUGHT UP THAT

3  DEFENSE COUNSEL WAS QUESTIONING THE LEGALITY OF THE SEARCH OF

4  THE CELL PHONES?

5  A.   YES.  WE'VE TALKED ABOUT -- WE TALKED ABOUT YOU WANTED A

6  SUPPRESSION HEARING FOR THE PHONES, AND THEN THAT'S WHEN A

7  DECISION WAS MADE TO GET A SEARCH WARRANT.

8  Q.   ALL RIGHT.  BUT MY QUESTION IS WAS THERE -- WAS IT BROUGHT

9  UP IN YOUR CONVERSATION THAT DEFENSE COUNSEL WAS QUESTIONING

10  THE -- EITHER THE CONSTITUTIONALITY OR THE LEGITIMACY OF THE

11  SEARCH OF THE CELL PHONES?

12  A.   RIGHT.  THE CONVERSATION WAS REGARDING A -- YOU WANTED TO

13  HAVE A HEARING TO DISCUSS THE ACTUAL SEIZURE OR THE SEARCH OF

14  THE CELL PHONE.  YES, THAT DISCUSSION WAS MADE.  WE HAD A

15  DISCUSSION ABOUT THAT, YES.

16  Q.   AND WOULD IT BE FAIR TO SAY THAT IT WAS -- THERE WAS SOME

17  UNDERSTANDING REACHED THAT A WAY TO GET -- OR MAYBE A WAY AROUND

18  ANY ISSUE OR LEGAL ISSUE WOULD BE TO OBTAIN A SEARCH WARRANT?

19  A.   I DON'T KNOW IF IT WAS TRYING TO GET AROUND A LEGAL ISSUE

20  BECAUSE IN THE AFFIDAVIT WE ACTUALLY INDICATED WE NEVER LOOKED

21  AT ANY OF THE PHONES, SO THE FINAL DECISION WAS MADE BY THE

22  PROSECUTOR TO GET A SEARCH WARRANT.

23       MS. TARVIN:  THE AFFIDAVIT IS 1, GOVERNMENT'S

24  EXHIBIT 1.

25       MR. SADOW:  RIGHT.

1  BY MR. SADOW:

2  Q.   YOU JUST MADE REFERENCE IN, I THINK, TO WHAT WOULD BE

3  GOVERNMENT'S EXHIBIT 1 THAT YOU DIDN'T DO ANYTHING WITH THE

4  PHONES?

5  A.   RIGHT.

6  Q.   WOULD YOU FIND THAT IN THE AFFIDAVIT.  DID YOU FIND IT?

7  A.   NOT YET.

8  Q.   LOOK AT PARAGRAPH 12, NUMBER -- THE FOOTNOTE.  IT SAYS,

9  AFTER THE TELEPHONES WERE SEIZED, AGENTS SEARCHED THE DEVICES,

10  WROTE DOWN ALL THE DATA SAVED IN EACH TELEPHONE.  HOWEVER,

11  AGENTS ARE NOT RELYING ON ANY OF THAT.

12          THE COURT:  WHAT PAGE IS IT?

13          THE WITNESS:  WHAT PAGE IS THAT?

14          MR. SADOW:  MINE DOESN'T HAVE A PAGE.  SORRY.

15          THE COURT:  MAYBE YOU OUGHT TO PUT NUMBERS ON THOSE.

16  BY MR. SADOW:

17  Q.   IS THAT WHAT WERE REFERENCING?

18  A.   RIGHT.

19  Q.   WHICH IS THE --

20  A.   FOOTNOTE.

21  Q.   IT'S PARAGRAPH 12 OF THE AFFIDAVIT AND APPLICATION -- OR

22  AFFIDAVIT IN SUPPORT OF APPLICATION FOOTNOTE ONE; RIGHT?

23  A.   THAT'S CORRECT.

24          MR. SADOW:  I THINK FOR PURPOSES OF THIS HEARING

25  THAT'S ALL I HAVE.  I'M GOING TO HAVE TO CALL AGENT PURVINES

 1  BRIEFLY.

 2          THE COURT:  ALL RIGHT.  WITH RESPECT TO THOSE FEW

 3  POINTS THAT WE TALKED ABOUT.

 4          MR. SADOW:  YES.  EXACTLY.

 5          THE COURT:  ALL RIGHT.  ANY --

 6          MS. TARVIN:  JUST A COUPLE, YOUR HONOR.

 7          THE COURT:  -- EXAMINATION?

 8                      CROSS-EXAMINATION

 9  BY MS. TARVIN:

10  Q.   AGENT MALLOY, AT THE TIME THAT YOU WENT -- AT THE TIME THAT

11  YOU PLACED MR. SHAW UNDER ARREST DID YOU HAVE AN ARREST WARRANT

12  FOR HIM?

13  A.   YES, WE DID.

14  Q.   AND THAT ARREST WARRANT WAS BASED UPON AN INDICTMENT THAT

15  HAD BEEN RETURNED?

16  A.   YES.

17  Q.   I WANT TO SHOW YOU WHAT I'M GOING TO MARK AS GOVERNMENT'S

18  EXHIBIT NUMBER 5.  I WANT TO SHOW YOU WHAT I'M MARKING NOW AS

19  GOVERNMENT'S EXHIBIT NUMBER 5, AND ASK YOU IF YOU CAN IDENTIFY

20  THIS FOR THE RECORD?

21  A.   YES.  THIS IS THE HANDWRITTEN EXAMINATION THAT AGENT

22  PURVINES FILLED OUT ON THE SCENE.

23  Q.   AT THE TIME THAT THE PHONES WERE SEARCHED?

24  A.   YES.

25  Q.   AND PRIOR TO OBTAINING GOVERNMENT'S EXHIBIT NUMBER 1, THE

1  AFFIDAVIT -- PREPARING THE AFFIDAVIT FOR THE SEARCH WARRANT, HAD

2  YOU EVER SAT DOWN AND LOOKED AT GOVERNMENT'S EXHIBIT NUMBER 5?

3  A.   NO.

4  Q.   THE OTHER THING IS IF YOU WOULD LOOK AT GOVERNMENT'S

5  EXHIBIT --

6           THE COURT:  ARE YOU ADMITTING THAT?

7           MS. TARVIN:  AT THIS TIME I WOULD TENDER GOVERNMENT'S

8  EXHIBIT NUMBER 5.

9           MR. SADOW:  NO OBJECTION.

10           THE COURT:  ALL RIGHT.  LET ME SEE.

11  BY MS. TARVIN:

12  Q.   IF YOU WOULD LOOK AT GOVERNMENT'S EXHIBIT NUMBER 1, AND IF

13  YOU WOULD GO BACK TO WHERE -- RIGHT ABOVE WHERE PARAGRAPH 12 IS.

14  SINCE YOU -- SINCE THIS AFFIDAVIT WAS PREPARED HAVE YOU

15  DISCOVERED ANY IN -- DISCREPANCIES IN THE AFFIDAVIT?

16  A.   YES.

17  Q.   OKAY.  AND WHAT IS THAT DISCREPANCY?

18  A.   IN THE AFFIDAVIT I INDICATED I SEIZED THE PHONES FROM

19  MR. SHAW'S PERSON.  IT WAS ACTUALLY AGENT MIKE DAILY.

20  Q.   OKAY.  AND AT THE TIME YOU PREPARED THE AFFIDAVIT IS THAT

21  HOW YOU REMEMBERED THE FACTS?

22  A.   YES.

23           MS. TARVIN:  THANK YOU.

24           THE COURT:  ALL RIGHT.  ANY FOLLOW-UP, MR. SADOW?

25           MR. SADOW:  SINCE COUNSEL HAS BRIEFLY REFERENCED

1    PARAGRAPH ABOVE 12 IN THE AFFIDAVIT.

2                     REDIRECT EXAMINATION

3    BY MR. SADOW:

4    Q.   THE AFFIDAVIT IN THAT PARAGRAPH SAYS, AGENTS THAT

5    APPROACHED BOTH MEN, THE AFFIANT APPROACHED THE MAN IN THE TRUCK

6    WHICH WAS PARKED IN THE DRIVEWAY.  I'M ASSUMING THAT'S CORRECT?

7    A.   YES.

8    Q.   I VERIFIED THROUGH HIS DRIVER'S LICENSE THAT THE INDIVIDUAL

9    WAS TOMAR SHAW, AND I PLACED HIM UNDER ARREST; CORRECT?

10   A.   YES.

11   Q.   BUT THE FACT OF THE MATTER IS, MR. SHAW WAS SITTING IN A

12   VEHICLE WITH THE IGNITION RUNNING, THE DOORS SHUT, YOU ALL

13   APPROACHED WITH GUNS DRAWN AND PULLED HIM OUT OF THE CAR; RIGHT?

14   A.   THAT'S CORRECT.

15   Q.   AND WHEN YOU PULLED HIM OUT OF THE CAR, YOU THEN, WHAT,

16   PLACED HIM ON THE GROUND?

17   A.   THAT'S CORRECT.

18   Q.   AND THEN YOU HANDCUFFED HIM?

19   A.   THAT'S CORRECT.

20   Q.   AND THEN YOU CHECKED TO SEE IF THAT WAS TOMAR SHAW BY

21   LOOKING AT HIS DRIVER'S LICENSE IDENTIFICATION; CORRECT?

22   A.   WE DID CHECK HIS DRIVER'S LICENSE AFTER WE HANDCUFFED HIM.

23   HOWEVER, ONCE WE STOOD HIM UP, I LOOKED AT HIM AND I SAID, THIS

24   LOOKS LIKE SHAW.  AND THEN WHEN WE GOT THE DRIVER'S LICENSE, I

25   CONFIRMED THAT THAT WAS SHAW.

1   Q.   AND THEN HE WAS ARRESTED AFTER YOU CONFIRMED WITH THE

2   DRIVER'S LICENSE?

3   A.   RIGHT.

4   Q.   WHAT WAS HE BEFORE THAT?

5   A.   HE WAS DETAINED FOR OUR SAFETY.

6           MR. SADOW:  OKAY.  THAT'S ALL.

7           THE COURT:  ALL RIGHT.  YOU MAY STEP DOWN, AGENT

8   MALLOY.

9       ALL RIGHT.  NOW YOU WANT TO CALL THE OTHER AGENT.

10          MR. SADOW:  I THINK IT'S TASK FORCE OFFICER PURVINES.

11          THE COURT:  ALL RIGHT.

12          COURTROOM DEPUTY CLERK:  GOOD AFTERNOON, AGENT.  IF

13  YOU WOULD PLEASE RAISE YOUR RIGHT HAND AND BE SWORN.

14              (WITNESS SWORN.)

15          COURTROOM DEPUTY CLERK:  PLEASE HAVE A SEAT AND STATE

16  YOUR FULL NAME AND SPELL YOUR LAST NAME FOR US.

17          THE WITNESS:  LEONARD VAN PURVINES, P-U-R-V-I-N-E-S.

18                  LEONARD VAN PURVINES

19      CALLED AS A WITNESS BY THE DEFENDANT, AFTER

20      HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

21                  DIRECT EXAMINATION

22  BY MR. SADOW:

23  Q.   AND HOW ARE YOU EMPLOYED, SIR?

24  A.   I WORK FOR D.E.A. AS A TASK FORCE OFFICER.  MY PRIMARY

25  EMPLOYMENT IS -- IS WITH THE CITY OF EAST POINT POLICE

1    DEPARTMENT.

2    Q.    AND WERE YOU EMPLOYED IN THAT CAPACITY BACK ON JUNE THE 8TH

3    OF 2011?

4    A.    YES, I WAS.

5    Q.    I'M GOING TO ME SHOW YOU WHAT'S BEEN ADMITTED FOR PURPOSES

6    OF THIS HEARING AS GOVERNMENT EXHIBIT 5, AND ASK YOU ON JUNE 8,

7    2011, DID YOU PREPARE THAT PARTICULAR EXHIBIT?

8    A.    YES, I DID.

9    Q.    ALL RIGHT.  WHERE WERE YOU WHEN YOU PREPARED IT?

10   A.    WHEN I PREPARED THE --

11   Q.    EVERYTHING BUT PAGE ONE.

12   A.    RIGHT.  EVERYTHING BUT PAGE ONE.  THE LINE SHEETS WERE

13   PREPARED AT THE RESIDENCE WHERE MR. SHAW WAS ARRESTED.

14   Q.    DO YOU HAPPEN TO REMEMBER THE ADDRESS?

15   A.    NOT THE NUMBERS.  IT'S DARBY (SIC) DRIVE, BUT I DON'T

16   REMEMBER THE NUMBERS.

17   Q.    4626 DARBY (SIC) LOOP --

18   A.    CORRECT.

19   Q.    -- IS THAT RIGHT?

20   A.    SOUNDS ABOUT RIGHT.

21   Q.    OKAY.  AND YOU WERE INSIDE THE RESIDENCE WHEN YOU PREPARED

22   GOVERNMENT'S EXHIBIT NUMBER 5?

23   A.    YES, I WAS.

24   Q.    APPROXIMATELY HOW LONG AFTER MR. SHAW WAS TAKEN INTO

25   CUSTODY AND ARRESTED?

1  A.    TEN, 15 MINUTES.

2  Q.    OKAY.  AND AT WHOSE SUGGESTION OR DIRECTION OR INSTRUCTION

3  DID YOU PREPARE NUMBER 5?

4  A.    SPECIAL AGENT MALLOY.

5  Q.    AND WHAT WAS THE PURPOSE OF THAT?

6  A.    TO GO THROUGH THE PHONES AND WRITE DOWN THE PHONE NUMBERS

7  OUT OF THE PHONE.

8  Q.    OKAY.  AND HOW DID YOU GO ABOUT DOING THAT?  WE KNOW

9  THERE'S THREE PHONES.  IT'S N-317.  IT'S ALREADY IN THE RECORD.

10  A.    CORRECT.

11  Q.    SO HOW DID YOU GO ABOUT COMPILING WHAT'S --

12  A.    THE PHONES WERE ON.  I OPENED THEM UP AND WENT THROUGH THE

13  ADDRESS BOOKS AND WROTE DOWN EVERY NUMBER AND WHOSE NAME WAS

14  BESIDE IT BECAUSE THAT'S THE ONLY WAY YOU CAN GET THE

15  INFORMATION.

16  Q.    WHEN YOU SAY THAT'S THE ONLY WAY YOU CAN GET THE

17  INFORMATION --

18  A.    WITHOUT A CELL BRITE.

19  Q.    OKAY.  AND YOU DIDN'T HAVE A CELL BRITE?

20  A.    NO, SIR.

21  Q.    AND AFTER YOU FINISHED COMPLETING GOVERNMENT'S EXHIBIT

22  NUMBER 5, WHAT DID YOU DO WITH IT?

23  A.    I PLACED IT IN THIS EVIDENCE BAG, HELD ONTO IT WITH THE

24  OTHER ITEMS THAT WE COLLECTED, TOOK IT UP TO THE OFFICE AND

25  PROCESSED IT.  I MADE COPIES OF THE ORIGINAL PAPERWORK, PUT THE

1    PHONES IN THE EVIDENCE BAG, SEALED THE EVIDENCE BAG AND

2    SUBMITTED IT TO THE EVIDENCE CUSTODIAN.

3    Q.    OKAY.  WHEN YOU SAID YOU MADE COPIES OF THE PAPERWORK, YOU

4    MEAN COPIES OF WHAT'S NOW GOVERNMENT EXHIBIT 5?

5    A.    CORRECT.  I MADE -- THE ORIGINAL COPIES WERE PLACED INSIDE

6    THE EVIDENCE BAG, AND I MADE A COPY FOR SPECIAL AGENT MALLOY WHO

7    WAS THE CASE AGENT.

8    Q.    DID YOU -- DO I UNDERSTAND, THEN, YOU JUST MADE ONE COPY

9    AND GAVE IT TO AGENT MALLOY?

10   A.    THAT'S ALL I DID, YES, SIR.

11   Q.    OKAY.  AND, I GUESS, PRIOR TO -- WHEN WAS THE LAST TIME YOU

12   SAW THE INVENTORY?

13   A.    I'M SORRY.  I DON'T UNDERSTAND.  THE INVENTORY?

14   Q.    GOVERNMENT'S EXHIBIT 35.

15   A.    OH, THE NEXT TIME I SAW IT IS WHEN A SEARCH WARRANT WAS

16   OBTAINED AND I SIGNED THE PHONES BACK OUT OF EVIDENCE AND OPENED

17   THE BAG, AND THIS WAS STILL INSIDE.

18   Q.    ALL RIGHT.  DO YOU KNOW -- AND IT DOESN'T SOUND LIKE IT.

19   BUT DO YOU KNOW WHAT, IF ANY, USE WAS MADE OUT OF WHAT'S NOW

20   GOVERNMENT EXHIBIT NUMBER 5 PRIOR TO THE SEARCH WARRANT?

21   A.    NO, SIR.

22   Q.    WAS THERE ANY OTHER INFORMATION THAT YOU WERE -- THAT YOU

23   OBTAINED FROM ANY OF THE THREE PHONES, N-317, THAT IS NOT

24   REFLECTED IN GOVERNMENT'S EXHIBIT NUMBER 5?

25   A.    NO, SIR.  WE DID SCAN THROUGH SOME OF THE PICTURES THAT

1    WERE ON THE PHONES, BUT THERE'S NO WAY TO DOWNLOAD THEM, SO WE

2    DIDN'T GET ANY OTHER INFORMATION EXCEPT FOR THE PHONE NUMBERS

3    AND THE NUMBERS.

4    Q.    ALL RIGHT.  TELL ME ABOUT -- WHEN YOU SAY "SCAN THROUGH,"

5    THAT MEANS YOU LOOKED AT THE PICTURES?

6    A.    CORRECT.

7    Q.    AND WHO LOOKED AT THE PICTURES?

8    A.    I BELIEVE I'M THE ONLY ONE THAT LOOKED AT THEM, TO MY

9    KNOWLEDGE, BECAUSE I WAS AT THE DINING ROOM TABLE WRITING THE

10   PHONE NUMBERS DOWN.

11   Q.    AND THE PURPOSE FOR WHICH YOU WERE LOOKING AT THE PICTURES

12   OR THE PHOTOS?

13   A.    TO SEE IF THERE WAS ANYTHING INCRIMINATING ON THE PHOTOS.

14   IF THERE WOULD HAVE BEEN, I WOULD HAVE WROTE IT DOWN, MADE A

15   NOTE OF IT, YOU KNOW, HE WAS SMOKING DOPE OR THERE WAS 20 POUNDS

16   OF POT OR SOMETHING, THAT MAY OR MAY NOT HAVE BEEN

17   INCRIMINATING.

18   Q.    OKAY.  AND, AGAIN, THE REASON FOR WRITING DOWN THE

19   INFORMATION THAT IS REFLECTED IN GOVERNMENT EXHIBIT NUMBER 5 IS

20   WHAT?

21   A.    THE SEARCH INCIDENT TO ARREST TO POSSIBLY USE THE NUMBERS

22   AT A LATER DATE.

23   Q.    AND HOW -- AND WHEN YOU SAY "POSSIBLY USE THEM," IN WHAT

24   SENSE?

25   A.    TO RUN THE NUMBERS THROUGH OUR DATABASE TO SEE IF ANY OF

1  THE NUMBERS COME UP TO OTHER KNOWN DRUG OFFENDERS.

2  Q.    SO MY WORDS, NOT YOURS, BUT FOR LAW ENFORCEMENT PURPOSES?

3  A.    CORRECT.

4           MR. SADOW:  OKAY.  THAT'S ALL.

5           MS. TARVIN:  ONE QUESTION.

6                    CROSS-EXAMINATION

7  BY MS. TARVIN:

8  Q.    DID YOU, THOUGH, RUN ANY OF THOSE NUMBERS THROUGH ANY

9  DATABASE?

10 A.    NO, MA'AM.

11 Q.    FOR LAW ENFORCEMENT PURPOSES?

12 A.    ONCE I PUT THEM INSIDE THE EVIDENCE BAG, I GAVE A COPY TO

13 SPECIAL AGENT MALLOY, AND THAT WAS IT UNTIL THE SEARCH WARRANT.

14          MS. TARVIN:  OKAY.  THANK YOU, YOUR HONOR.

15          THE COURT:  ALL RIGHT.

16          MS. TARVIN:  NO MORE QUESTIONS.

17          THE COURT:  ALL RIGHT.  AGENT PURVINES, YOU MAY STEP

18 DOWN.

19          THE WITNESS:  THANK YOU, YOUR HONOR.

20     YOU WANT THIS BACK?

21          MR. SADOW:  SOMEBODY WANTS IT BACK.

22          THE COURT:  ALL RIGHT.  DOES THAT COVER THE ARREST AND

23 THE SEIZURE AND THE VIEWING OF THE PHONES?

24          MR. SADOW:  I BELIEVE SO.

25          THE COURT:  ALL RIGHT.  SO THAT'S ALL THE TESTIMONY WE

1   NEED TO TAKE ON THAT.  ALL RIGHT, THEN, MR. SADOW, I WILL LET

2   YOU BRIEF THE ISSUE.  WE HAVE THE WARRANT'S BEEN INTRODUCED INTO

3   EVIDENCE.  YOU'VE INDICATED THAT YOU DON'T REALLY HAVE A

4   CHALLENGE TO THE AFFIDAVIT ITSELF, BUT, OF COURSE, YOU CAN BRIEF

5   WHATEVER ISSUES.

6           MR. SADOW:  RIGHT.

7           THE COURT:  BUT THAT REALLY HASN'T BEEN RAISED, THAT

8   I'VE HEARD.

9           MR. SADOW:  IF WE'RE SPEAKING IN TERMS OF PROBABLE

10  CAUSE OR FRANKS, NO.

11          THE COURT:  PROBABLE CAUSE, VALIDITY ON ITS FACE,

12  RUBBER STAMP, WHATEVER ELSE YOU WANT TO --

13          MR. SADOW:  WHO SIGNED THIS WARRANT?  I THINK RUBBER

14  STAMP WILL NOT BE MY APPROACH TO THIS.

15          THE COURT:  RIGHT.  THERE'S NO STAMP.  ALL RIGHT.

16  THEN HOW MUCH TIME WILL YOU TAKE, A COUPLE OF WEEKS, MR. VANN?

17          COURT REPORTER:  THAT'S FINE.  YES.

18          MR. SADOW:  TAKE SEVERAL WEEKS.

19          THE COURT:  COUPLE OF WEEKS TO GET THE TRANSCRIPT.

20  YOU CAN TAKE LONGER, IT SOUNDS LIKE, AS FAR AS MR. SADOW IS

21  CONCERNED.

22          MR. SADOW:  I START -- AS I SAID -- WELL, I GUESS YOU

23  DON'T KNOW.  I'M IN A MURDER TRIAL THAT STARTS ON MONDAY OUT OF

24  TOWN FOR A COUPLE OF WEEKS.

25          THE COURT:  ALL RIGHT.  SO YOU COULD EXPECT TO GET

1  THE -- THIS IS, WHAT, THE 10TH?

2        COURTROOM DEPUTY CLERK:  THE 11TH.

3        THE COURT:  THE 11TH.  YOU CAN EXPECT TO GET IT THE

4  WEEK OF THE 24TH.  AND YOU'D BE ON TRIAL.  I MEAN, WHAT DO YOU

5  WANT, THREE WEEKS?  IS THAT --

6        MR. SADOW:  MID-NOVEMBER WOULD BE GREAT IF THAT WORKS

7  OUT FOR EVERYBODY.

8        THE COURT:  THE 15TH?

9        MR. SADOW:  WELL, I KNOW MY CLIENT HAS A

10  CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL, AND THE SPEEDY TRIAL ACT

11  APPLIES.  IT WOULD APPEAR THAT IN THIS CASE THERE ARE A NUMBER

12  OF DEFENDANTS THAT STILL ARE ONGOING IN THE PRETRIAL STAGE.

13        THE COURT:  THERE ARE.  WE WERE LOOKING.  THERE ARE

14  SOME, ALTHOUGH THE FIELD IS NARROWED, I BELIEVE, SOMEWHAT.

15        MS. TARVIN:  YES, SIR.

16        THE COURT:  AS FAR AS WHO'S BEEN MADE READY OR HASN'T

17  APPEARED.

18        MS. TARVIN:  OR HAS PLED.

19        THE COURT:  OR IS OTHERWISE DISPOSED OF.  THERE ARE

20  SOME, SO, YES, IT'S NOT A -- THE CASE STILL HAS ISSUES

21  OUTSTANDING.  SO, YOU KNOW, IF YOU WANT 'TIL -- THE MIDDLE OF

22  NOVEMBER WOULD BE, LIKE --

23        MR. SADOW:  WHAT'S THE MONDAY, LIKE, THE MIDDLE OF

24  NOVEMBER?

25        THE COURT:  WELL, THE 14TH IS MONDAY.  IF YOU WANT TO

```
1   MAKE IT THE 15TH OR THE 16TH, THAT'S ALL RIGHT.

2           MR. SADOW:  YEAH, THE 16TH WILL BE GREAT.

3           THE COURT:  ALL RIGHT.  THAT'S THE MIDDLE OF THE

4   MONTH, THE 16TH.  MS. TARVIN, HOW MUCH DO YOU WANT?  THAT WILL

5   BE THE 16TH OF NOVEMBER.  HOW MUCH TIME DO YOU NEED TO RESPOND?

6           MS. TARVIN:  I MEAN, TWO WEEKS.

7           THE COURT:  TWO WEEKS WOULD MAKE IT THE 30TH, COMES

8   OUT EXACTLY ON THE 30TH OF NOVEMBER.

9           MS. TARVIN:  OKAY.

10          THE COURT:  AND THAT'S FINE WITH ME, THE 30TH.  AND

11  THEN IF THERE IS A REPLY, MR. SADOW, WITHIN SEVEN DAYS.

12          COURTROOM DEPUTY CLERK:  THE 7TH.

13          THE COURT:  THE 7TH, WHICH WILL MAKE IT THE 7TH OF

14  DECEMBER.  ALL RIGHT.  WE'RE INTO DECEMBER.  ALL RIGHT.  THAT'S

15  THE BRIEFING SCHEDULE AND THAT'S THE MOTION.  I MEAN, THERE ARE

16  NO OTHER MOTIONS TO SUPPRESS.  THERE'S NO STATEMENTS OR

17  ANYTHING.  WE DIDN'T TALK ABOUT THAT.

18          MR. SADOW:  NO.

19          THE COURT:  ALL RIGHT.  THEN THIS IS THE ISSUE AND

20  WE'LL LOOK AT IT.  THERE IS NO OTHER ISSUE AT THIS TIME.  ALL

21  RIGHT.  IT WILL BE BRIEFED AND I'LL TAKE A LOOK AT IT.

22          MR. SADOW:  THANK YOU.

23          MS. TARVIN:  THANK YOU, YOUR HONOR.

24          THE COURT:  ALL RIGHT.  WE'LL BE IN RECESS.  HAVE I

25  GOT ALL THE EXHIBITS?  I SEEM TO BE MISSING THE AFFIDAVIT.
```

1    SOMEBODY MAY HAVE PICKED IT UP BY ACCIDENT.  I CAN'T SEE IT.

2              MS. TARVIN:  THANK YOU.

3              THE COURT:  THERE YOU GO.

4                   (PROCEEDINGS ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

    I, MONTRELL VANN, CCR, CSR, RPR, RMR, CRR, OFFICIAL COURT

REPORTER OF THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN

DISTRICT OF GEORGIA, ATLANTA, DO HEREBY CERTIFY THAT THE

FOREGOING 42 PAGES CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS

HAD BEFORE THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA,

IN THE MATTER THEREIN STATED.

    IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE

26TH DAY OF OCTOBER 2011.


                _____
                MONTRELL VANN, CCR,CSR,RPR,RMR,CRR
                OFFICIAL COURT REPORTER
                UNITED STATES DISTRICT COURT