IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:11-CR-239-29-CAP |
| TOMAR SHAW | : | |

GOVERNMENT'S OBJECTIONS TO
REPORT AND RECOMMENDATION (Doc 546)
FILED FEBRUARY 10, 2012

Comes now the United States of America, by Sally Quillian Yates, United States Attorney, and Lisa W. Tarvin, Assistant United States Attorney for the Northern District of Georgia, and files this objection to the Report and Recommendation of the United States Magistrate Judge recommending that the defendant's motions to suppress evidence (Docs 363, 338) be granted. (Doc 546).

Introduction

The district court should reject the Report and Recommendation of the Magistrate Judge suppressing evidence seized from the defendant's telephones since the application for, and execution of, the search warrant for the cellular telephones seized from the defendant were lawfully seized and searched incident to his arrest. The defendant's telephones were seized incident to the defendant's lawful arrest based

on an indictment, resulting from a wiretap investigation, in which the defendant was intercepted using cellular telephones to conduct drug-related business.  And, at the time of its seizure, one of the telephones seized, SHAW's Sprint telephone, was identified as a device through which agents had intercepted conversations between the defendant and others.   Moreover, the defendant has never requested that his telephones be returned to him.   Thus, the telephones were lawfully seized and processed as evidence as instrumentalities of the crime for which the defendant was indicted, and the defendant was not deprived of his possessory rights under the Fourth Amendment.

## Statement of the Case

The defendant was indicted on May 11, 2011, in an initial indictment, along with thirty-one (31) co-defendants, with drug and money laundering charges.  (Doc 1).[1]  He was arrested on June 8, 2011, and has been detained pending trial.  (Doc. 143).  The defendant filed two motions to suppress.  (Docs 362, 338).  The first motion was a preliminary motion to suppress, and the second motion challenged the warrantless entry and search of the defendant's person and residence at 4626 Derby Loop, Fairburn, Georgia, on June 8, 2011, including the seizure of three telephones taken from the defendant's person incident to his arrest.  (Id.).  On September 7, 2011,

---

[1]A superseding indictment was later filed to add a defendant; the charges against the defendant remained the same.  (Doc 149).

after notifying the defendant of its intent, the government obtained search warrants for

three telephones that were seized from the defendant's person on June 8, 2011, when

the defendant was arrested pursuant to an indictment and arrest warrant.  (Exhibit 1,

¶ 11, fn 1; Gov. Exhibits 1, 1-A, 1-B, 1-C, 2, 3 and 4 (the applications, affidavit, and

search warrants)).

A hearing on the defendant's motions to suppress was held on October 11,

2011.  (Doc 434).  Before any evidence was presented, the government outlined the

issue before the court.

> When Mr. Shaw was arrested on June the 8th of 2011, agents went to his
> residence armed only with an arrest warrant.  They arrested him,
> searched his person, found some telephones, and the conducted a search
> of the residence.  The government has informed defense counsel that we
> will not be seeking to introduce any evidence sized from the residence
> at 4626 Derby Loop Drive. . . . The government further told Mr. Sadow
> that we would be seeking to introduce . . . three telephones that were
> found on Mr. Shaw's person . . . .  Thereafter, the government obtained
> from this court three search warrants for the telephones . . . .. The [phones]
> were actually searched at the scene by hand.  The government then came
> back, asked for a search warrant and then re-searched the phones.

(Doc 453-4).  The government then sought to clarify the defendant's specific issue

before the court since it was not clear from his motion.  (Id.).  Through counsel, the

defendant stated that he was not contesting the seizure of the telephones seized from

the defendant at his arrest.  (Id. at 4).  Even so, the defendant wanted to make a record

of the facts concerning the seizure of the defendant's telephones on June 8, 2011, "as

to what the extent of that search was so that I can have a determination made as to whether the search was illegal. Just because I don't have case law that says you can't go get a search warrant after you performed an illegal search doesn't mean that it isn't a legal issue that is ripe for consideration." (Id. at 12).  The defendant did not move for the Court to return the cell phones to him.

The parties then briefed the issue.  The defendant argued that suppression was warranted because his Fourth Amendment rights were violated by a delay between the original search and seizure of the telephones on June 8, 2011, and the later search conducted pursuant to search warrants authorized on September 7, 2011.  (Docs 470, 486).  In response, the government established that the delay neither adversely affected the defendant's Fourth Amendment rights nor prejudiced him in any way, and thus, suppression was not required.  (Doc 485).

Then, on February 10, 2012, the Magistrate Judge issued a Report and Recommendation to the District Court, recommending that the defendant's motions to suppress be granted because the government's delay between the searches of the defendant's telephones was unreasonable insofar as the government's retention of the telephones deprived the defendant of his property.  (Doc 546).  The Court did not order that the telephones should be returned to the defendant.  For the reasons set forth below, the government objects to the Report and Recommendation and moves this Court to reject the Magistrate Judge's recommendation.

FACTS

This investigation, which began in June 2008, focused on a Mexico-based drug trafficking organization (DTO) managed by GORDO in Mexico and operating in the Atlanta area.  (Exhibit 1 - Search Warrant Affidavit, ¶ 7).  Between April 2009 and April 2011, agents monitored approximately 42 telephones pursuant to court-authorization, and seized approximately $1.36 million of drug proceeds, 312 kilograms of cocaine and 3,200 pounds of marijuana.  As a result, 33 individuals were indicted on various charges including drug conspiracy charges pursuant to Title 21 U.S.C. § 846, money laundering conspiracy charges pursuant to Title 18 U.S.C. § 1956(h), and numerous substantive drug and money laundering charges.  (Docs 1, 149).

During the investigation, agents identified LATINO MIX, a wire remitter business, used by GORDO and other drug trafficking organizations to launder drug related money to Mexico.  (Exhibit 1, ¶ 8).  LATINO MIX was owned and operated by Sonia SANCHEZ (Tomar SHAW's girlfriend).  (Id.).  The drug money was delivered to LATINO MIX's locations and was gradually transferred via wire transmissions through multiple transactions to recipients, who are primarily in Mexico.  (Id.).  Nominee names were used for the senders and recipients of the money wired.  (Id.).

Through monitored telephones, agents learned that Sonia SANCHEZ was involved in drug trafficking activities with:

- Sonia SANCHEZ's cousin David SANCHEZ, Sonia SANCHEZ's boyfriend Tomar SHAW, a/k/a JAY, and Sonia SANCHEZ's brother RAFA; and

- Sonia SANCHEZ's drug sources of supply, including Raul VALENCIA.

(Id. at 9)

In May 2011, thirty-two (32) individuals, including Raul VALENCIA, Sonia SANCHEZ,  Tomar SHAW, a/k/a Jay, and David SANCHEZ, were indicted and arrest warrants were issued.  (Docs 1, 133).   Then, on June 8, 2011, agents executed arrest and search warrants in the investigation, and conducted consent searches at various locations.  (Exhibit 1, ¶11).

Tomar SHAW was arrested,  pursuant to a warrant, at approximately 6:35 a.m., on June 8th, at 4626 Derby Loop, Fairburn, Georgia.  (Id.)  Agents did not have a search warrant for the residence.  (Id.)  Incident to his arrest, Tomar Shaw's person was searched and three telephones were seized from his pants pockets: a Verizon Samsung telephone, a Boostmobile Samsung telephone, and a Sprint HTC telephone

(hereinafter "SHAW's Sprint telephone").[2]  (Id.; Doc 453-19, 20).  Within a few minutes of the defendant's arrest, the telephones were searched at the scene by DEA Task Force Officer Leonard Purvines, who first identified the number assigned to each telephone, and then scrolled through the devices and wrote down the telephone numbers stored as contacts and the last numbers dialed to and from the devices.  (Doc 453-22-24, 35-36).  Agents were not able to retrieve any text messages because they did not have a cell brite.[3]  (Id. at 35).  As TFO Purvines explained:

> The phones were on.  I opened them up and went through the address books and wrote down every number and whose name was beside it because that's the only way you can get the information . . . without a cell brite.

(Id.).

Based on the investigation, agents knew that Tomar SHAW had used telephones, both seized and unseized, to communicate and conduct drug-related business with conspirators since agents had intercepted conversations between Tomar SHAW and conspirators through court-authorized wiretaps, as set forth below.

---

[2]During the investigation, agents intercepted conversations between Tomar SHAW, using SHAW's Sprint telephone, and conspirators.  (Gov't Exhibit 1, ¶ 12b(1).

[3]A cell brite is an "electronic device that allows [agents] to download  . . . the information on a cell phone . . . [and then] get the text messages or that type information along with the actual phone numbers on the contact list."  (Doc 453-23).

(Exhibit 1, ¶ 12).

- On June 22, 2010, agents received authorization to intercept conversations over TT#29, used by David SANCHEZ. And, on July 1, 2010, at approximately 11:48 a.m., agents intercepted a conversation between David SANCHEZ, using TT#29, and Don CHAVA, an unindicted co-conspirator, during which David SANCHEZ stated that he had spoken with the appropriate person, who said that "it shouldn't be too long before they land." Don CHAVA replied okay. David SANCHEZ stated that he would send a "guy over there," and would meet Don CHAVA there. Agents believed that David SANCHEZ stated that a shipment of drugs would be arriving soon and he would meet Don CHAVA at the delivery site. That same day, at approximately 11:54 a.m., agents intercepted a conversation between David SANCHEZ, using TT#29, and Tomar SHAW, using a telephone that was not seized, during which David SANCHEZ asked, "Are you coming in a couple of hours because I'm about to get ready?" Tomar SHAW replied, "Yes." Agents believed that David SANCHEZ stated that he was expecting a shipment of drugs to arrive soon and he was inquiring if Tomar SHAW was ready. Agents believed that Tomar SHAW worked for and/or was in association with David SANCHEZ. (Id. at ¶ 12(a)(1) and (2)).

- On November 16, 2010, agents received authorization to intercept conversations over TT#40, used by Sonia SANCHEZ. And, on November 23, 2010, agents intercepted a conversation between Sonia SANCHEZ, using TT#40, and Tomar SHAW, using **SHAW's Sprint telephone**. During the conversation, Sonia SANCHEZ stated that "Mino called me" and that Tomar SHAW needed to send the money owed to him (Mino). Tomar SHAW stated that he did not know when he would send the money. In this investigation, Mino was identified as the source of supply for drugs for Sonia SANCHEZ and Tomar SHAW. Agents believed that Tomar SHAW owed money to Mino for drugs that he (Tomar SHAW) had received from Mino. (Id. at ¶ 12(b)(1) and (2)).

- On or about February 14, 2011, agents began monitoring (229) 575-6023 , used by Raul VALENCIA, and intercepted a conversation between Raul VALENCIA and an unidentified man (believed to be "Tomar SHAW"), using a telephone used by Sonia SANCHEZ , during which

Raul VALENCIA asked what had happened.  Tomar SHAW replied that "nothing happened" but the "guy hasn't come yet," and that had some "shit" of his own that he would give to Raul VALENCIA because Tomar SHAW had asked Raul VALENCIA to "wait until tomorrow."  Tomar SHAW further stated that he would definitely see "him" later that day, and Tomar SHAW wanted to give Raul VALENCIA "that."  Raul VALENCIA asked for the time that "he" was coming, to which Tomar SHAW stated that he did not know, but that it "will definitely be today."  Sonia SANCHEZ then got on the telephone, and Raul VALENCIA asked about the guy coming and if Tomar SHAW would bring "it all together or what."  Sonia SANCHEZ replied that Tomar SHAW was waiting for the guy to come and did not want Raul VALENCIA "to be stressing out or anything."  Raul VALENCIA then asked if it would be today, and Sonia SANCHEZ instructed Raul VALENCIA to come on, that Tomar SHAW will "give him will be for the 25."  Agents believed that Tomar SHAW owed money to Raul VALENCIA for a prior drug transaction, possibly $25,000, and that Tomar SHAW was waiting to receive some money from a drug customer before Tomar SHAW could pay Raul VALENCIA that day.  (Id. at ¶ 12(c)).

- On March 16, 2011, agents received court-authorization to monitor several telephones, including TT#51, used by Maria del Rosario DIAZ-GARCIA, TT#53, used by Sonia SANCHEZ, and TT#54, used by Raul VALENCIA.  And, on March 22, 2011, agents intercepted a conversation between Sonia SANCHEZ, using TT#53, and Desiree FRAGOZA, an indicted conspirator, during which Sonia SANCHEZ stated that Tomar SHAW did not have the money that he owed Desiree FRAGOZA.  Desiree FRAGOZA stated that Tomar SHAW had instructed her to come and pick up the money that he owed her.  Sonia SANCHEZ stated that Tomar SHAW did not want Desiree FRAGOZA to stay with Sonia SANCHEZ because Desiree FRAGOZA was in danger.  Sonia SANCHEZ further explained that Tomar SHAW believed that "Vani" (Juan Gyavanni DIAZ, who worked for Sonia SANCHEZ) was cooperating with law enforcement.  Agents believed that Sonia SANCHEZ, Tomar SHAW, and other conspirators suspected that DIAZ and his wife (name unknown) were cooperating with the police because DIAZ was arrested on December 6, 2010, while driving Carmen BARBOSA-MENDOZA to work for Sonia SANCHEZ.  Then, on March

31, 2011, at approximately 2:35 p.m., agents intercepted a conversation between Raul VALENCIA, using TT#45, and Tomar SHAW, using **SHAW's Sprint telephone**, during which Raul VALENCIA stated, "Do you have something?" Tomar SHAW replied no. Raul VALENCIA stated, "Let me know so I can take the truck or the regular car." Tomar SHAW stated that he just wanted to talk. Agents believed that Tomar SHAW had received drugs from Raul VALENCIA and that Raul VALENCIA had asked if Tomar SHAW had money ("something") which he owed Raul VALENCIA from a prior drug transaction. (Id. at ¶ 12(d)(1) and (2).

Following the initial seizure and search incident to his arrest, the agents placed the cellphones, and the handwritten notes, in an evidence bag and stored them in evidence to be used in the later prosecution of the defendant. (Id. at 35-36). The fact that the defendant possessed the telephone (SHAW's Sprint telephone) through which agents intercepted his drug-related conversations with conspirators was, therefore, in and of itself evidence of the drug offenses of which the defendant was indicted. Nothing more was done with the cell phones while the thirty-three (33) defendant case, which was declared complex, (Doc 291), proceeded through the early stages of pre-trial motions and matters, including detention hearings, discovery production, and initial appearances.

On September 7, 2011, the government obtained search warrants for the

telephones seized from Tomar SHAW on June 8, 2011, including SHAW's Sprint telephone.  (Exhibit 1, 1-A, 1-B, and 1-C).  Included in the affidavit for the search warrants was the following footnote:

> After the telephones were seized, agents searched the devices and wrote down all of the data saved in each telephone.  However, agents are not relying on any of the recorded data for purposes of this affidavit and establishing probable cause. Presently, there is a pending motion to suppress, in part, the results of the searches of the telephones (Docs 338, 362); a hearing on the motion is scheduled for September 21, 2011. Counsel for Tomar SHAW has been informed by the government that it intended to apply for search warrants for the telephones seized from Tomar SHAW on June 8, 2011.

(Exhibit 1, ¶ 11, fn 1).  A second, more thorough, search of the cell phones (i.e. the data stored in the cellphones) was conducted, pursuant to the search warrants, and information greater than that recovered in the initial, more cursory, search incident to arrest was recovered.  (Doc 453- 10-11).

The defendant has been detained pending trial, and has remained in the custody of the United States Marshal's Service since June 8, 2011.  (Doc. 143).  There is no evidence that the defendant ever requested return of the cell phones, which are being held by the Government as evidence of the conspiracy.  (Doc 453-14-15, 27-28).[4]

Argument and Citation of Authority

---

[4]As an inmate in a custodial facility, the defendant is not entitled to take possession of or to use a cellphone, regardless.

<u>The District Court Should Reject the Report and Recommendation of the United States Magistrate Judge Suppressing Evidence Seized from The Defendant's Telephones Since the Application For And Execution of the Search Warrant on the Cellular Telephones Seized From the Defendant, Which Came Three Months After the Telephones Were Lawfully Seized and Searched Incident to His Arrest, Did Not Violate the Defendant's Fourth Amendment Rights, and the Evidence Obtained From the Telephones Pursuant to the Execution of the Search Warrants Is Not Subject to Suppression</u>.

In the Report and Recommendation, the Magistrate Judge summarized the issue as "whether the government's delay of more than ninety days in obtaining a search warrant for three cell phones seized incident to Defendant's arrest violated Defendant's Fourth Amendment rights," and recommended that the evidence seized from cell phones pursuant to search warrants should be suppressed based on <u>United States v. Mitchell</u>, 565 F.3d 1347 (11th Cir. 2009).   Contrary to the Magistrate Judge's reasoning, <u>Mitchell</u> is distinguishable from the present facts, and thus, its holding is not controlling here.

A.    The Government Did Not Interfere With the Defendant's Possessory Rights Because The Telephones Were Retained as Evidence of the Charged Offenses.

In <u>Mitchell</u>, the Court focused on the "significant interference with [the defendant's] possessory interest" that resulted from the delay between the probable cause seizure of an item (a computer hard drive in <u>Mitchell</u>) and the application for and execution of a search warrant.  <u>Mitchell</u>, 565 F.3d at 1351.  Unlike here, agents conducted a "knock and talk" at Mitchell's residence based on information obtained

during a child pornography investigation involving wiretaps and search warrants for records from a website involved in the illegal activity.  Agents did not have an arrest warrant for Mitchell.  The police seized a computer hard drive based on Mitchell's admission that it probably had child pornography stored on it.  Id. at 1350-51.  Three weeks later, the police obtained a search warrant for the computer hard drive and executed it.  Because Mitchell was not under arrest *and* because the incriminating nature of the data stored on the hard drive could not be determined until it was searched, the Court noted that Mitchell's "possessory interest at stake was substantial."  Id.  This is because, in a situation such as in Mitchell,

> [T]he purpose of securing a search warrant soon after a suspect is dispossessed of a closed container reasonably believed to contain contraband is to ensure its prompt return should the search reveal no such incriminating evidence, for in that event the government would be obligated to return the container *(unless it had some other evidentiary value)*.  In the ordinary case, the sooner the warrant issues, the sooner the property owner's possessory rights can be restored if the search reveals nothing incriminating.

Id. at 1352 (emphasis added).  And because Mitchell's possessory interest at stake was substantial, the justification for the three week delay was not so compelling to outweigh the defendant's interest.  Similarly, in other cases cited by the defendant, the defendants were not under arrest when agents seized and searched personal property that was being challenged on the same grounds.  See e.g. United States v. Mayomi, 873 F.2d 1049, 1054 (7th Cir. 1989)(involving detention of mail suspected of

containing drugs); United States v. Dass, 849 F.2d 414, 415 (9th Cir. 1988)(involving detention of mailed package suspected of containing drugs).  In those cases, the overriding concern for the courts in determining whether a lengthy delay in obtaining a search warrant violates a suspect's Fourth Amendment rights was whether the suspect has a possessory interest in the items.  Suspects not under arrest retain a possessory interest in mail, packages, and other items that are detained based upon suspicion, or even probable cause, and the purpose of securing a search warrant without unreasonable delay is, per Mitchell, to ensure that those items may be delivered or returned to their owner if they are searched and found not to contain incriminating evidence.

In contrast, here, the defendant's telephones were seized incident to the defendant's lawful arrest based on an indictment, resulting from a wiretap investigation, in which the defendant was intercepted using cellular telephones to conduct drug-related business. And, at the time of its seizure, one of the telephones seized, SHAW's Sprint telephone, was identified as a device through which agents had intercepted conversations between the defendant and others.  Thus, the devices were lawfully seized as instrumentalities of the crime for which the defendant was

indicted.  The fact that the defendant possessed the telephones is important evidence to establish the defendant's identity as a participant in the intercepted conversations.

It is equally clear from Mitchell and the other cases cited that if a defendant does not have a possessory interest in an item seized *or* if the item is seized as incriminating evidence incident to arrest and, therefore, has evidentiary value in and of itself, there is no right to return of that property.  Id. at 1352.  In the present case, unlike in Mitchell, the defendant's cell phones were not seized based upon suspicion.  Rather, they were seized incident to a lawful arrest as evidence of the criminal activity for which the defendant was indicted.  The defendant was charged with engaging in a long-running conspiracy to distribute narcotics based in large part upon his conversations on and use of cellular telephones.  Those cell phones, regardless of the information contained within them, had evidentiary value in and of themselves and were thus retained by the government for use at trial, which is why they were processed and retained by the agents as evidence.

In the Report and Recommendation, the Magistrate Judge found that there was no evidence that "the telephones were in and of themselves contraband, nor was [the phones] evidentiary value readily apparent with regard to other information to be obtained from the telephone." (Doc 546-7).  Yet, the affidavit for the search warrants (Exhibit 1) were signed by the same Magistrate Judge, indicating that the Court

-15-

believed that there was probable cause to search the telephones absent "other information to be obtained from the telephone." (Doc 546-7). Moreover, as the Magistrate Judge did not order the government to return the telephones to the defendant, the government is now in an odd position of having evidence lawfully in its possession that it is unable to review, even though the Court agreed, when it signed the search warrants, that there was probable cause to believe that the telephones contained evidence related to the defendant's drug activities.[5] Further, since he is in custody, the defendant is not entitled to possession of the cell phones, unlike the defendant in Mitchell or those whose mail or packages were detained. Because the defendant cannot possess the cell phones and the cell phones themselves are evidence, he has no possessory rights in the cell phones and his Fourth Amendment rights were not implicated by the search warrant three months after their seizure.

---

[5]By comparison, when agents seize evidence such as drug ledgers, their review of the evidence is not confined to the moment of its seizure. Agents are allowed to view and review the drug ledger as long as it is in their possession lawfully, including until and through trial.

B.      The Fact That the Defendant Did Not Ask for the Telephones to be Returned
Precludes a Finding that His Fourth Amendment Rights Were Violated By The
Delay.

In addition, the defendant never asked for the return of the cell phones, a fact

which the Magistrate Judge considered insignificant.  If a defendant does not seek the

return of property, he cannot claim that a delay in obtaining a search warrant has

adversely affected his Fourth Amendment rights.  United States v. Stabile, 633 F.3d

219, 235-236 (3rd Cir. 2011).  In Stabile, the defendant consented to police seizure

of computer hard drives so that the police could search for evidence of suspected

financial fraud and child pornography.  Id. at 226.  However, the police did not arrest

the defendant and did not obtain a search warrant until three months later.  Id.   The

defendant later moved to exclude the evidence found during the search and, relying,

as the defendant herein did, on Mitchell, argued that the three-month delay violated

his Fourth Amendment rights.  Id. at 235.

The Third Circuit disagreed and held that the delay, while of some concern, did

not violate the defendant's Fourth Amendment rights because the delay did not

adversely affect the defendant's possessory interest in the computer hard drives.  Id.

at 235-236.  Though the defendant claimed he needed the computer equipment for

work, the Court was persuaded by the fact that the defendant never asked for the

return of the items.  Id.

> [I]t is undisputed that Stabile did not ask for the return of his hard drives until February 15, 2008 - eighteen months after the initial seizure of the hard drives.  <u>See</u> <u>United States v. Johns</u>, 469 U.S. 478, 487, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (defendants who "never sought return of the property" cannot argue that delay adversely affected Fourth Amendment rights).

<u>Id.</u>

In <u>Johns</u>, the Supreme Court took up the issue of whether a delayed search of packages, which were seized from vehicles based upon probable cause that they contained contraband, violated the defendants' Fourth Amendment rights.  469 U.S. at 480, 105 S.Ct. at 883.  As here, the defendants did not contest the legality of the initial search and seizure of the packages from the vehicles, but later argued that the delay in completing a more thorough search of the packages violated their rights.  <u>Id.</u> In reversing the lower court and holding that the delay in the search of the packages did not violate the defendants' rights, the Court noted that:

> Respondents do not challenge the legitimacy of the seizure of the trucks or the packages, and they never sought return of the property. Thus, respondents have not even alleged, much less proved, that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment.

<u>Id.</u> at 487, 105 S. Ct. 887.

As in <u>Stabile</u> and <u>Johns</u>, the defendant here does not challenge the legitimacy of the initial seizure of the cell phones, nor the subsequent search of those cell phones at the arrest scene, incident to his arrest.  Moreover, as in the cited cases, the defendant

has never sought the return of the cell phones.  Perhaps most importantly, however, the defendant has "not even alleged, much less proved" that the delay in obtaining and executing a search warrant on the cell phones affected his legitimate Fourth Amendment interests in the cell phones, nor can he since he is in federal custody and is precluded from possessing a cell phone.  The cell phones have independent evidentiary value and are not subject to being returned to the defendant and, even if they had been, the defendant is incarcerated and cannot lawfully possess or use the cell phones.  Therefore, the defendant's possessory interests in the cell phones have not been impacted, and the three-month delay in conducting a second search of the cell phones pursuant to a search warrant did not prejudice the defendant or violate his Fourth Amendment rights.  Suppression of the evidence gathered as a result of the second search is not warranted.

C.    Since the Cell Phones Were Lawfully Seized As Evidence, the Government Is Not Required to Justify Any Delay in Reviewing The Evidence.

The Magistrate Judge noted several times in the Report and Recommendation that the Government had failed to offer any justification or rationale for the delay in obtaining the search warrants, citing Mitchell.  Unlike here, the defendant in Mitchell was not charged with a crime at the time the seizure occurred, and it was not apparent that the computer itself was evidence until the agents searched the computer.  In contrast, the cell phones taken from the defendant have evidentiary value, which was

-19-

apparent at the time they were seized since the defendant had been intercepted during wiretaps and a cursory search of the devices was conducted within minutes of the defendant's arrest.  There is nothing unreasonable about the government reviewing evidence lawfully in their possession, such as the telephones here, after the seizure, including through a trial.

<u>Conclusion</u>

Therefore, based on the foregoing reasons, the Government respectfully requests the Court to reject the Magistrate Judge's Report and Recommendation.

Respectfully submitted,

SALLY Q. YATES
UNITED STATES ATTORNEY

/s/ *Lisa W. Tarvin*

LISA W. TARVIN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 574960
600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404)581-6000

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document electronically:

Steven H. Sadow
260 Peachtree Street, NW
Suite 2502
Atlanta, GA 30303

This 21st day of February, 2012.

/s/ *Lisa W. Tarvin*

LISA W. TARVIN
ASSISTANT UNITED STATES ATTORNEY